*# DS116200*

**ORIGINAL**



US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2019 MAY 13  PM 12: 11

DEPUTY CLERK 

IN THE UNITED STATES DISTRICT COURT
FOR THE ~~EASTERN~~ DISTRICT OF TEXAS
~~SHERMAN~~ DIVISION   DALLAS
→Northern

VANDAMME V. JEANTY

               Plaintiff

vs.

**3-19CV1137-N**

NEBRASKA FURNITURE MART, a corporate entity;
BIG BUBBA'S BAIL BONDS, a corporate entity
DENTON COUNTY, TEXAS, a municipal entity;
THE COLONY, TEXAS, a municipal entity;
THE COLONY POLICE DEPARTMENT, a government entity;
DENTON COUNTY DISTRICT ATTORNEY'S OFFICE, a government entity;
TRACY MURPHREE, Denton County Sheriff's Office, officially;
DAVID COULON, City of Colony Police Department, officially
EDWARD LIPSETT, Store Director, Nebraska Furniture Mart, Officially;
MICHEAL DICKENS, JASON STEVENS, CASEY MCGREGOR,
KELLY R. GOODNESS, JOHN DOE JAILERS 1 through 3, all individually.

               Defendants

_____/

## **PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

    Plaintiffs, VANDAMME JEANTY, in *propria persona*, file this Original

Complaint against Defendants and allege as follows:

### **INTRODUCTION**

    1.    Plaintiffs, VANDAMME JEANTY, bring this civil action against a

number of Defendants under Title III of the Omnibus Crime Control and Safe Streets Act

of 1968, codified at 18 U.S.C. §§ 2510-2521, as amended by the Electronic

1

Communications Privacy Act of 1986 ("ECPA" or "Federal Wiretap Act"), as well as state law claims under Tex. Civ. Prac. & Rem.Code § 123.001, *et seq.* ("Texas Wiretap Act") and Article 18.20, § 16 of the Texas Code of Criminal Procedure.

2.      Plaintiff also bring claims under 42 U.S.C. § 1983, § 1985, Federal Statutes, and Texas statutory and common state laws stemming from events occurred during his illegal detention and arrest by a private citizen at the Nebraska Furniture Mart (hereinafter "NFM"), a furniture store, which is managed by a private, for-profit corporation. The events alleged herein, which gives rise to the Complaint, began on November 9, 2015 when Plaintiff and his wife were illegally seized, searched, detained, arrested and culminated in Plaintiff's wife, Carline Merisier's pretrial detention and prosecution and Plaintiff's pending prosecution.

3.      Defendants' unlawful actions include depriving Plaintiff and his wife (hereinafter collectively "the couple") of their protected liberty interest to be free from illegal citizen arrest, false arrest, false imprisonment, and denying them Due Process and Equal Protection under the laws in violations of the couple's rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Federal Statutes and Texas state laws. Plaintiff is seeking compensatory, exemplary damages, declaratory and injunctive relief.

## JURISDICTION

4.      This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), and pursuant to 28 U.S.C. § 1343(a)(3) and (a)(4) (civil rights). This Court has supplemental jurisdiction of the Texas state law claims pursuant to 28 U.S.C. § 1367. Additionally, by virtue of Plaintiff Jeanty's citizenship of a

foreign state, viz., a native and national of Haiti, Jeanty is pleading alienage jurisdiction pursuant to 28 U.S.C. § 1332(a)(2). Furthermore, Plaintiff Jeanty is not a permanent resident of the United States. *Id. See also*, 28 U.S.C. § 1332(a)(3) ("Jurisdiction exists in a suit between citizens of different states where aliens are additional parties"). Lastly, jurisdiction is conferred upon this Court pursuant to the Aliens Tort Claims Act ("ATCA") or Alien Tort Statute ("ATS"). *See*. 28 U.S.C. § 1350 ("The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States.").

## VENUE

5.      Venue in this Court is proper as to all Defendants pursuant to 28 U.S.C. § 1391(b)(1) because Defendants are residents of the State of Texas and one or more of the Defendants resides in the Northern District of Texas *and* a corporate defendant is deemed to reside in all districts within which the defendant has sufficient contacts to support personal jurisdiction. *See id.* § 1391(c)(2).

## PARTIES

### A.      Plaintiff

6.      Plaintiff, VANDAMME JEANTY, is a 40-year-old, resident of Arlington, Tarrant County, State of Texas.

### B.      Defendants

### 1.      Corporate Defendants

7.      Defendant Nebraska Furniture Mart (hereinafter "NFM") is a Texas Limited Liability Company doing business in this judicial district for purposes of profit and is a "person" for purposes of the Federal Wiretap Act & Texas Wiretap Act. *See*. 18

U.S. Code § 2510 (6) and Texas Penal Code § 1.07(a)(38), respectively. According to the Texas Secretary of State, NFM's registered agent is Incorp Services, Inc. 815 Brazos St, Suite 500, Austin, Texas 78701.

8.      Defendant Big Bubba's Bail Bonds, a for-profit corporate entity doing business in this judicial district for purposes of profit. According to the Texas Secretary of State, Defendant Big Bubba's Bail Bonds do not register with the Secretary of State. Big Bubba's Bail Bonds—Denton can be served at 1512 E McKinney ST, STE 204. Denton, TX 76209.

### 2.      Municipal Defendants

9.      Defendant Denton County, Texas is a governmental entity and a political subdivision of the State of Texas and is a "person" for purposes of Federal Wiretap Act, 18 U.S. Code § 2510 (6) and 42 U.S.C. § 1983. Denton County, Texas is responsible for overseeing the arrest, prosecution and the unlawful acts and omissions of the 158th Judicial District of Denton County and Denton County District Attorney's Office. Defendant was acting under color of state law and in the course and scope of its employment as the political entity with the policy making authority within the State of Texas and Denton County, Texas at all times material. Denton County, Texas may be served via its County Judge, the Honorable Judge Mary Horn, County Judge, at Courthouse on the Square, 110 West Hickory Street, 2nd Floor, Denton, Texas 76201-4168.

10.     Defendant The Colony, Texas, is a governmental entity and a political subdivision of the State of Texas and is a "person" for purposes of Federal Wiretap Act, 18 U.S. Code § 2510 (6) and 42 U.S.C. § 1983.

4

### 3.   The Political Subdivision Defendants

11.     Defendant The Colony Police Department is a law enforcement agency tasked with enforcing the law of Texas such as investigating crimes, making arrests, enforcing traffic regulations on county roads, and all other crimes within the jurisdiction of the city of The Colony and Denton County, Texas. Defendant is a "person" for purposes of Federal Wiretap Act & Texas Wiretap Act.[1] The Colony Police Department may be served at 5151 North Colony Boulevard, The Colony, Texas 75056.

12.     Defendant Denton County District Attorney's Office is the chief law enforcement agency tasked with representing the State of Texas in prosecuting adults charged with felony cases. Defendant Denton County District Attorney's Office may be served at 1450 E. McKinney Street, Suite 3100, Denton, TX 76209.

### 4.   The Individual Defendants

13.     Defendant Tracy Murphree is the chief law enforcement officer with the Denton County Sheriff's Office and is sued in his official capacity. Defendant Murphree manages the day-to-day operations of the Denton County Jail and is a final policy-maker for the Denton County Jail for purposes of providing jail related services and meeting the needs of its pretrial detainees and convicted inmates. Plaintiff brings claims against the Sheriff's Office directly under 42 U.S.C. § 1983 as allowed by law for its customs, policies and practices as set forth herein. Defendant Tracy Murphree was acting under

---

[1] 18 U.S. Code § 2510 (6). ("person" means any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation). *See also*, Texas Penal Code § 1.07(a)(38).
[2] In discovery exhibits propounded by the State of Texas, Defendants NFM and its employee McGregor identified this room—designated to detain those suspected of theft

color of state law and in the course and scope of his employment as chief law enforcement officer with Denton County Sheriff's Office at all times material. Defendant Tracy Murphree may be served with process via the County Judge, the Honorable Judge Mary Horn, County Judge, at Courthouse on the Square, 110 West Hickory Street, 2nd Floor, Denton, Texas 76201-4168.

14.     Defendant Jason Stevens is sued in his individual capacity as a law enforcement officer with The Colony Police Department, tasked with and assigned to respond to emergency and non-emergency calls to serve and protect the citizen of the city of The Colony, Texas. For Purpose of Plaintiffs' rights under section 1983, Defendant Stevens was acting under color of state law and in the course and scope of his employment as a law enforcement officer with The Colony Police at all times material. For the purpose of the Federal and Texas Wiretap, Defendant Stevens was not acting under color of law as that term is defined under the Acts. Defendant Jason Stevens may be served at 5151 North Colony Boulevard, The Colony, Texas 75056.

15.     Defendant Michael Dickens is sued in his individual capacity as an Assistant District Attorney of Denton County, Texas responsible for prosecuting individuals charged with felony criminal offenses. Defendant was acting under color of state law and in the course and scope of his employment as assistant District Attorney at all times material. Michael Dickens may be served via Denton County District Attorney's Office, 1450 E. McKinney Street, Suite 3100, Denton, TX 76209.

16.     Defendant Casey McGregor is sued in his individual and official capacity as a store security guard and/or fraud investigator who supervises the furniture mart security apparatus and is responsible to effect detainment and arrest of individuals who

are alleged to have committed theft at the store. Defendant has a close working relationship with the Colony Police and is a de facto State agent for The Colony Police Department. Defendant Casey McGregor may be served at 5600 Nebraska Furniture Mart Drive, The Colony, TX 75056.

17.     Defendant Edward Lipsett is sued in his individual and official capacity as Nebraska Furniture Mart Director. Defendant Edward Lipsett may be served at 5600 Nebraska Furniture Mart Drive, The Colony, TX 75056.

18.     Defendant Kelly R. Goodness, is sued in her individual capacity as an employee and/or subcontractor of Defendant Denton County, Texas and was responsible to prepare a forensic psychological report pertaining to the Plaintiff's mental competency. At all material times, this defendant was acting under color of state law. Defendant Kelly Goodness may be served at her place of employment located at 55 Meeting Street, Southlake, TX 76092.

19.     Defendant David Coulon is sued in his individual and official capacity as the Chief of Police of the City of Colony, Texas, a law enforcement agency within the State of Texas. Defendant was the chief policy maker for the City of Colony during the relevant period. Plaintiff brings claims against the Defendant directly under 42 U.S.C. § 1983 as allowed by law for its customs, policies and practices as set forth herein. Defendant David Coulon was acting under color of state law and in the course and scope of his employment as chief law enforcement officer with the City of Colony, Texas at all times material. Defendant David Coulon may be served with process via the County Judge, the Honorable Judge Mary Horn, County Judge, at Courthouse on the Square, 110 West Hickory Street, 2nd Floor, Denton, Texas 76201-4168.

## FACTUAL ALLEGATIONS

20.     Plaintiff's wife, Ms. Carline Merisier ("Merisier") is a Nebraska Furniture Mart account holder, with a card issued by Nebraska Furniture Mart  (hereinafter "NFM") bearing her name and an account number. The couple have visited NFM on several occasions and purchased furnitures, appliances and other household goods.

21.     On November 9th 2015, Merisier came to meet with Plaintiff, who was already at NFM, accompanied by their children.

22.     Following a disagreement between the couple, Merisier exited the vehicle, vacated the premise of the Nebraska Furniture Mart and headed toward the nearby highway to return home.

23.     While waiting outside his vehicle for a purchased order, Plaintiff was approached by Defendant McGregor who insisted that Plaintiff should sign a document for the release of items allegedly purchased.

24.     Upon noticing the items reflected on said document are not those that he ordered, Plaintiff demurred and informed Defendant McGregor that he did not order the items reflected in the receipt of purchase and asked to speak with the representatives who sold him the items.

25.     Defendant McGregor insisted and demanded Plaintiff's signature on the purchase receipt. Plaintiff was adamant and refused to sign the receipt to take possessions of the unrecognized purchases.

8

26.     Defendant McGregor then identified himself as a peace officer, and ordered Plaintiff to place his then-8 month old infant in the vehicle.

27.     Defendant McGregor with the assistance of other NFM security guards aggressively handcuffed, arrested and took Plaintiff to a back room, which NFM dubbed the "Detention Room,"[2] located in the back office of the store. Defendant McGregor intentionally over-tightened the handcuff, leading to Plaintiff incurring bruises in both wrists.

28.     More than half an hour later after Merisier exited the furniture mart, while on the phone with her brother who were securing transportation for her to be ferried home, four (4) Nebraska Furniture Mart security guards approached Merisier onto the street, ordered her to "put your hands behind your back."

29.     The security officers handcuffed Merisier, summoned a female guard to perform a pat-down search on the latter's person and whisked her into a security guard patrol vehicle.

30.     Merisier was then driven back to NFM and taken to a back office, interrogated and badgered by Casey McGregor, a store security guard and purported fraud investigator. Defendant's real purpose in interrogating the Plaintiffs was to capture potentially incriminating statements.

31.     Defendant McGregor threatened to call Child Protective Services (hereinafter "CPS") to take possession and deprived the couple of their children if Merisier failed to cooperate and confess to Shoplifting/Theft.

---

[2] In discovery exhibits propounded by the State of Texas, Defendants NFM and its employee McGregor identified this room—designated to detain those suspected of theft in the store—as the "Detention Room," an apt description confirming Defendants' habit of assuming police powers by detaining and arresting shoppers.

32.     Unsuccessful at his amateurish sleuthing attempt, Defendant McGregor called the police. According to the police officer's Probable Cause Affidavit (hereinafter "PCA"), "On 11-09-2015, at approximately 1634 hours, Officer Jason Stevens #396 was dispatched to a *Theft* call at Nebraska Furniture Mart . . . Stevens arrived and made contact with NFM Fraud Investigator Casey McGregor who stated that he had detained two people (one male, one female) for *theft*." (PCA at p. 1). (Emphasis added).

33.     The couple were handcuffed for the entire duration of their interrogations by Defendant Casey McGregor, and the latter took photographs of the couple to post around the store and loss prevention office and warned them not to ever come back to the store again.

34.     Defendant McGregor and unknown NFM security guards took custody of the couple's children and would not allowed the couple to have any contact with their two children—a four (4) year old and an eight (8) month old.

35.     Defendant McGregor arrested Plaintiff without probable cause. When Plaintiff informed McGregor that he (Plaintiff) was a regular shopper and that he was innocent of shoplifting, McGregor informed Plaintiff "we don't want your kind around here. We know what you are up to bud! And you can take that Nigerian scam fraud shit somewhere else."

36.     When McGregor ordered Plaintiff and the latter's wife to sign a document designed to prevent future entry to NFM, Plaintiff objected and refused to sign the document. In response, McGregor stated "Oh, no worries. We'll make sure you are prosecuted."

10

37.     Approximately 30 minutes later, Defendant Jason Stevens, a Police Officer with the Colony, Texas police department responded to the call of theft and came to the store to interview the couple. Defendant McGregor kept the couple in handcuffs in the so-called "Detention Room" for over two hours without a brief respite from the over-tightened handcuffs.

38.     Upon arrival at NFM, Officer Stevens, without performing an independent investigation, already considered Plaintiff and wife under arrest.

39.     Defendant Stevens interviewed the couple and, without establishing independent *reasonable suspicion* and *probable cause*, performed a *transfer of custody*, wherein Defendant McGregor released the couple of NFM's security-issued handcuffs only to be replaced with Officer Steven's police-issued handcuffs.

40.     Defendant Stevens threatened to call CPS on the couple. When Plaintiff complained there was no evidence of a crime of shoplifting, Stevens laughed and said something to the effect "Welcome to The Colony!" then made it clear "Around here, we don't need evidence."

41.     Sometimes during the encounter, Defendant Stevens, who was under the impression Plaintiff was of Nigerian descent, stated, "that's how these scums make their living man . . . off our backs!" which drew laughter from the other police men who were milling around.  Officer Stevens concluded "after this, ya'll learn not to mess with our city."

42.     Upon information and belief, Defendant Stevens or an unidentified police officer, acting on suggestions and directions of Defendant McGregor, called Child Protective Services (CPS) to take custody of couple's children.

11

43.     Defendant Stevens booked the couple in the Colony police department jail division.

44.     An investigator from Child Protective Services[3] made contact with, and received statements from Merisier at The Colony police department jail.

45.     On or about November 10, 2015, Merisier posted bond in the amount $15,000 dollars from the Colony Police jail unit. As a result, Merisier's mugshot was not captured to be posted online by any third party website since she posted bail before being transferred to the Denton County Jail.

46.     Upon her release, Merisier learned that CPS had temporarily removed the couple's children from their home. Following a few meetings with CPS, the children were eventually returned to the custody of Merisier.

47.     On or about November 11, 2015, Plaintiff was transferred to the Denton County Jail. There, jailers escorted Plaintiff to a shower area where the latter was ordered to strip, turn around, bend over, squat, spread her buttocks, and cough in view of other detainees. Jailers then sprayed chemical disinfectant on him and ordered him to shower in view of other detainees

48.     Plaintiff subsequently posted bail through a contract with Big Bubba's Bail Bonds—the surety. For a fee of $4,700 dollars, Big Bubba's Bail Bond, provided a $40,000 surety bond for Plaintiff's release from custody on November 13, 2015. Plaintiff's mugshot was posted online as a result of the transfer to the county jail. Big Bubba's Bail Bonds was fully made aware of Plaintiff's immigrant status prior to accepting being the surety of Plaintiff's bond.

---

[3] Which is a branch of the Texas Department of Family and Protective Services (TDFPS).

49.     Plaintiff was subsequently transferred to the custody of Immigration & Customs Enforcement ("ICE"), the immigration enforcement component of the Department of Homeland Security ("DHS"), pursuant to a federal ICE detainer lodged against him as a result of the November 9, 2015 arrest.

50.     On or about November 22, 2015, while housed in DHS-ICE custody at the Johnson County Detention Center, Plaintiff was violently assaulted by an avowed racist detention officer. *See. John Roe v. Johnson County, Texas et al* (Case No. 3:18-cv-02497-B-BN).

51.     Plaintiff was subsequently criminally charged and arrested for reporting the violent sexual assault. (State of Texas v. VanDamme Jeanty. Johnson County, Texas. Clerk of Court Case number: M201501849).

52.     On or about January 20, 2016, Plaintiff was released from ICE custody pursuant to an immigration bond.

53.     On or about April 1, 2016, unbeknownst to the couple at the time, True Bill of Indictments were returned against the couple from Denton County 158th Judicial District Court, charging both (Jeanty and Merisier) with Possession of Identifying Information—Texas Penal Code 32.51. The District Attorney's Office (via ADA Dickens) falsely intimated to the grand jury that the couple was in fact in possession of identifying information, which caused the grand jury to indict Plaintiff and Merisier based on false information.

54.     On or about June 09, 2016, a Complaint & Information was also returned against Merisier from the Denton County Court at Law#4 charging her with Failure to Identify—Texas Penal Code 38.02.

55.     The couple (Merisier & Jeanty) arraignment for the criminal offense of Possession of Identifying Information was scheduled for April 22, 2016 at 8:30 a.m. by the trial court.

56.     On April 16, 2016, Plaintiff, while shopping at a local grocery store (Costco), suffered an epileptic seizure and was rushed to a local hospital.

57.     Merisier attended the arraignment and, on behalf of Plaintiff, informed the court and Plaintiff's former court-appointed counsel Chris Abel [4] of Plaintiff's hospitalization.

58.     The Court continued Plaintiff's criminal proceedings to a later date.

59.     Plaintiff spent 7 days in a local hospital and was diagnosed with Traumatic Brain Injury ("TBI"), Aphasia, Encephalopathy, seizure disorder and conversion disorder. He underwent physical and speech therapy in the hospital and was referred to a psychiatrist.

60.     Plaintiff was in a catatonic state, unable to ambulate, required to wear diapers and fed around the clock by hospital nurses.

61.     Seeing Plaintiff's health was deteriorating, against doctors' orders, Plaintiff's wife (Merisier) decided to request his release from the hospital to convalescent at home.

62.     While convalescing at home, Plaintiff underwent several second opinion diagnoses by numerous physicians, neurologists and neuro-psychiatrists—all of whom reported similar results.

_____

[4] Though the online court docket shows former counsel was appointed 12/12/2015, Plaintiff did not meet (albeit incompetent to consult with counsel) with former counsel until the next court hearing (05/27/2016).

63.     Unable to consult with his former attorney, Plaintiff's criminal proceedings for Possession of Identifying Information (Texas Penal Code 32.51) was continued by the trial court numerous times due to his illness.

64.     Big Bubba's Bail Bonds was made aware of Plaintiff's mental incapacity and unsound mind during Plaintiff's hospitalization and following his release from the hospital.

65.     On or about July 6, 2016, without notification to Plaintiff or his wife, Big Bubba's Bail Bonds, the surety for Plaintif's bail bond, moved the trial court for an arrest warrant pursuant to Article 17.16 & 17.19 of the Texas Code of Criminal Procedure.

66.     On July 8, 2016, the trial court issued a capias for Plaintiff's arrest.

67.     Although Big Bubba's Bail Bonds was fully made aware of Plaintiff's immigrant status, its stated reason for withdrawing Plaintiff's bond was because Plaintiff was likely to abscond due to his immigration status, i.e., alienage.

68.     On August 2, 2016, at the request of Merisier, Plaintiff's former court appointed criminal attorney ("Christopher Abel") moved the trial Court for a Motion to Set Bail or Bond ("Bond Motion") and a Motion for an Incompetency Examination pursuant to Art. 46B.005 of the Texas Code of Criminal Procedure ("Incompetency Motion").

69.     On August 2, 2016, the trial court signed an order granting Plaintiff's Motion Suggesting Incompetency and Request for Examination. A court-appointed psychologist (a one "Kelly R. Goodness") was assigned to examine Plaintiff.

70. On August 25, 2016, Plaintiff, accompanied by his lived-in nurse and paid transportation service, was wheeled into the office of Defendant Goodness for the forensic psych examination.

71. On August 26, 2016, Plaintiff, bound to a wheelchair, attended a scheduled announcement hearing. Plaintiff was wheeled into the trial court, accompanied by four individuals: (1) Plaintiff's wife (Merisier), (2) Plaintiff's brother (Frantzi Jeanty) (3) Plaintiff's 24-hour live-in nurse and (4) a handicapped transportation service driver employed by Plaintiff's wife to transport him to and from court, hospitals and doctors visits, etc.

72. On August 26, 2016, the trial court granted Plaintiff's Motion for Bond in the amount of $10,000 and the latter posted bond a few hours later.

73. On September 23, 2016 hearing, based on Defendant Goodness's report, Plaintiff's's former attorney, Christopher Abel, said aloud in open court to the prosecutor that "he's [Plaintiff] fucking faking."

74 The incident led Merisier, acting on behalf of Plaintiff, to file a disciplinary complaint with the Chief Disciplinary Counsel (CDC) of the Texas Bar. (In regards to which the trial judge—Steve Burgess—later remarked "you did not have to do that").

75. Merisier also mailed a letter to the trial court judge complaining of Mr. Christopher Abel's courtroom remarks.

76. Merisier requested Christopher Abel's withdrawal as counsel and on December 9, 2016, the trial court appointed substitute counsel ("Ervette P. Sims") to represent Plaintiff.

77.   Merisier also reported Defendant Goodness, the court-appointed psychologist, to the Texas State Board of Examiners of Psychologist for unprofessional conduct and biases.[5]

78.   Plaintiff's trial court proceedings were continued pending second opinion for Incompetency Examination and a Jury Trial on Plaintiff's incompetency to stand trial.

79.   In parallel fashion, the trial court in Plaintiff's Johnson County case for False Report to A Peace Officer had also appointed a psychologist to evaluate his competency to stand trial.

80.   On August 25, 2017, Plaintiff, through no fault of his own, failed to appear for a Jury Trial on his Competency to stand trial in connection to his Johnson County case of False Report to a Peace Officer.

81.   On or about September 2017, during discovery conference with former counsel ("Victor Amador") for her criminal case, Merisier learned the following:

> 1) that the entire November 9, 2015 encounter with the Defendants McGregor and Stevens in the back office of NFM was audibly and visually recorded without her consent.
> 2) that Defendant Jason Stevens seized Plaintiff Merisier's cellular phone[6] and accessed said phone by scrolling through it, looking at phone numbers and text messages.
> 3) that Jason Stevens seized the couple's Apple MacBook computer[7] without their authorization or consent.
> 4) that Jason Stevens also seized other items and personal effects (letters, papers and other documents) from the couple's vehicle.

---

[5] Goodness and former counsel Abel was caught making snide remarks regarding Plaintiff's claim of incompetency.
[6] Defendant Stevens is seen on video accessing the contents of the cellular phone, but Plaintiff did not know he seized said phone until discovery in the case.
[7] Defendant Stevens did not search the vehicle in the presence of the couple. The couple neither knew Defendant Stevens seized the Apple MacBook computer. Prior to discovery, the couple thought the Apple MacBook computer and cell phones were misplaced or lost. It was never identified or listed in their property list when booked in jail.

17

82.     During a subsequently discovery conference on September 2017, Merisier also learned the alleged facts upon which Defendant peace officer Jason Stevens obtained the signature of a neutral and detached magistrate for the Probable Cause Affidavit to justify Plaintiffs' warrantless arrests were mere fabrication and falsehoods.

83.     The PCA contained various falsehoods allegedly reported to the police by Defendant McGregor. Specifically, the PCA alleges the following with respect to Defendant McGregor:

> Defendant Mcgregor contacted the police and falsely reported that he detained Plaintiff Merisier for theft; that on November 8, 2015, Merisier opened a credit application for $20,000 using complainant Mary Pascal's name and other personal identifying information, including name, date of birth and social security number; that on November 9, 2015, a male subject [Merisier's husband] arrived at NFM, purchased two televisions, and indicated that he was going to use the newly opened Pascal credit account; that the male then purchased a vacuum cleaner on the Pascal account and applied the total to the credit line; that McGregor called the number on the Pascal's account and Plaintiff Merisier allegedly answered and stated "Yes, this is Mary."

84.     The PCA also contained various falsehoods alleged by Stevens. Specifically, the PCA alleges the following with respect to Defendant Stevens:

> Defendant Stevens made contact with the female [Plaintiff Merisier] in the loss prevention interview room. The encounter was recorded both audibly and visually recorded by a department issued body cam that Stevens was wearing. Stevens informed her that she was under arrest and therefore required provide her name and date of birth. The female verbally provided the name and date of birth of Appolon, Caroline BF 05-23-1977. McGregor also stated that he called the phone number listed on the fraudulent account and the phone in the female's pocket began to ring showing McGregor's phone number. Stevens also made the following false allegations: that he read Miranda warnings to the female; that the female stated she barely knew the male and had known him only as Joseph for approximately 3 months; that the female stated she only drove the Ford to the pick up area but did not know who it belonged to; that Stevens asked the male who the Ford belonged to and he stated that he didn't know and he hadn't been driving it; that the presence of stolen items in the Ford gave Stevens probable cause to search the vehicle for further stolen items.

85.     After noticing various constitutional violations, Merisier believed there were grounds for filing pretrial pleadings on her case. When, at the urging of Merisier, former counsel (Victor Amador) refused to file pretrial motions, including a Motion to Suppress, Merisier requested former counsel's withdrawal from the case.

86.     The same day former counsel (Victor Amador) filed several boilerplate motions[8], including a Motion to Suppress[9], apparently for the sole purpose of inflating and collecting of attorney fees expense claim with the court.

87.     Merisier decided to proceed pro per in the belief she was vested in her own case and that court-appointed attorneys are as good as their informed, educated and involved clients.

88.     On October 4, 2017, during a hearing on Motion for Discovery, Defendant Michael Dickens, the Assistant District Attorney (hereinafter ADA), assigned to prosecute the couple's criminal matter, falsely informed the trial court that couple knew the alleged complainant (Mary Pascal) and that the court should not allow Merisier the benefit of being in physical possession of discovery so as to preclude the couple from having access to the personal identifying information of the complainant.[10]

---

[8] Two of those motions included named Defendants other than Plaintiff Merisier. Apparently, in great haste to file the motions, former counsel failed to substitute Plaintiff Merisier's name in the boilerplate form motions.

[9] The motion to suppress referenced a gun case, which had nothing to do with the charged offense of possession of identifying information.

[10] First, in light of the fact that the police probable cause affidavit already listed the personal identifying information of the complainant, this was simply an asinine ploy by the ADA to withhold discovery from Plaintiff. Second, not to mention, any identifying information could have been redacted. Third, at any rate, the charge offense of "possession of identifying information" presumed that Plaintiffs were already *allegedly* in possession of the complainant's identifying information, thus, undermining ADA's specious argument to the contrary.

89.     On October 4, 2017, ADA Dickens also informed the trial court judge, Steve Burgess, that the complainant in the case, was an attorney from Florida who "knew" the couple—a complete lie.

90.     The couple have neither met nor ever heard of the alleged complainant until the criminal matter.

91.     On October 4, 2017, the trial court ruled in favor of the State and restricted Merisier's access to, and review of, discovery on a "visual" basis only, citing Merisier's denial of knowing the alleged complaint "doesn't pass the smell test."

92.     Merisier made several arrangements with Defendant ADA Michael Dickens to review discovery.[11]

93.     During the very few instances Merisier was able to review discovery in the Denton County District Attorney's Office within view and supervision of an assigned person tasked to monitor Merisier, Merisier learned that Defendant ADA Michael Dickens were collaborating and in constant communications with officials from Johnson County and DHS-ICE regarding Plaintiff's Johnson County criminal case and immigration status, respectively.

94.     The collaboration and ex parte communication with the Johnson County officials  (police and prosecutors) were in regards to Plaintiff's then-pending criminal prosecution against him for the offense of False Report to a Peace Officer/Federal Special Investigator pursuant to Texas Penal Code 37.08.

---

[11] The trial judge did not allow Plaintiff Merisier to obtain copies of discovery. She was restricted only to visual review of discovery.

20

95.     Discovery notations show bad faith communications between Dickens, Johnson County officials and ICE, a clear intent on the part of Dickens to prosecute Plaintiff so as to effect his removal from the United States.

96.     Discovery note entries also revealed that Defendant ADA Dickens believed Plaintiff was feigning his illness and was a ghost writer for Merisier's *pro se* criminal pretrial motions. (A belief prompted by the alleged complainant—reputedly a racist as per a Florida Bar complaint and determination file—who unabashedly lied about knowing the Plaintiff and his wife to bolster the couple's prosecution).

97.     On December 19, 2017, the trial court held a hearing on Plaintiff Merisier's *pro se* Motion to Suppress.

98.     At the inception and continued throughout the pretrial hearing, Judge Steve Burgess kept making snide remarks to Merisier, insinuating she did not draft the Motion to Suppress and that the Plaintiff had written them—an indication that there have been ex parte communications between the judge and ADA Dickens.

99.     During the hearing, Defendant Jason Stevens informed the court that during the couples' detention in the NFM's lost prevention office on November 9, 2015, Plaintiff remarked that he (Plaintiff) did not care about the couple's children and had in fact said "Fuck the kids!." (He lied! This never happened).

100.    The trial judge, Steve Burgess, apparently took Defendant Jason Stevens' remark regarding Plaintiff at face value, suddenly inquired of the prosecutor "why isn't there a charge of child endangerment in this case?"

101.    The trial judge became furious and refused to listen to the argument and evidence presented by Merisier for the remainder of the hearing. The trial court then

denied Merisier's Motion to Suppress despite the clear mandate of the laws in support of said Motion.

102.    The hearing was then continued for December 20, 2017 (next day) for the court to hear and rule on State's Motion to Amend the Indictment.

103.    On December 20, 2017, Merisier contacted the court and advised that she will not be able to attend the hearing after being falsely arrested at her home by Johnson county sheriff and Arlington police.[12]

104.    On December 20, 2017, Merisier filed her Motion for Findings of Fact & Conclusions of Law[13] via the online portal right before being transported to jail.

105.    The next day, following her release on bail from the Tarrant County jail, Merisier walked in to the trial court to inform the judge and prosecutor that her failure to appear was not purposeful and beyond her control and that she was not absconding.

---

[12] A scheme hatched by ADA Dickens in collaboration with Johnson County officials to achieve two goals: 1) to ensnare the couple by imprisoning them, which in effect, would prevent Merisier from filing pro se pleadings on her behalf to the court, pleadings which ADA Dickens was challenged and frustrated by and knew were certain to be upheld on appeal. Once secured the couples' detention (Jeanty pursuant to a capias from Johnson County and Merisier pursuant to a fabricated charge of harboring Jeanty, which would caused Merisier's failure to appear for the 12/20/2017 hearing, and therefore, a capias issued for her arrest), ADA Dickens planned to blackmail Merisier into pleading guilty by colluding with, or at least impressed upon, the trial court judge, Steve Burgess, to deny Merisier any request for release on bail. ADA Dickens, like the Johnson County yokels thought Plaintiff would have been deported following an anticipated conviction in the Johnson County case.

[13] During the Motion to Suppress hearing, the trial court judge never took Merisier (who was pro se) seriously and deliberately dismissed all her factual and legal arguments despite clear incontrovertible case laws supporting her claims. Hence, it is no stretch of imagination that her filing of this Motion infuriated the trial judge and prosecutor because it would have required the judge to file written factual findings and conclusions of laws he (Judge) reached regarding those findings. This was an insurmountable task because not only the judge or prosecutor would have had to review the more than three (3) hours of court transcripts of that December 19, 2017 hearing, but those would-be findings of facts and conclusions of law were destined to be reversed on appeal.

106.    As soon as the trial judge noticed Merisier, he (judge Steve Burgess) raised up off from his judicial chair, had a sidebar with the bailiff and instructed the bailiff to take Merisier into custody and chided her that she was about to spend the Christmas holiday in jail.

107.    On that same day (December 20, 2018), when Merisier appeared before a magistrate judge in the booking area of the jail for a bond hearing, the magistrate judge informed Merisier that there was a "No Bond" hold signed by Defendant Judge Steve Burgess and that unfortunately he (magistrate judge) was not able to override the bond hold. The judge then remarked, "well, I've never seen him [Judge Burgess] do that before."

108.    Plaintiff learned that Defendant Steve Burgess of the felony trial court signed her warrant of arrest with a large block letter caption, which reads "NO BOND!!!."

109.    Merisier was subsequently booked and subjected to a pat down search at the Denton County Jail. Merisier was then escorted to a room with other detainees. Once inside, in view of other detainees, jailers ordered Merisier to strip, turn around, bend over, squat, spread her buttocks, and cough.

110.    After Merisier dressed, jailers escorted her to a shower area where jailers once again ordered her to strip, turn around, bend over, squat, spread her buttocks, and cough. Jailers then sprayed chemical disinfectant on her and ordered her to shower in view of other detainees.

111. Merisier was subjected to the very same invasive stripped search a number of Ten (10) times throughout her pretrial detention which began December 20, 2017 and ended on January 26, 2018.

112. Specifically, two to three weeks into her detention, the jail conducted a contraband search where all detainees' properties were searched. During the contraband search, all detainees' persons were also indiscriminately searched, including Merisier.

113. Additionally, Merisier was stripped searched each and every time upon returning to enter her jail dorm or cell following court hearings,[14] medical visits,[15] booking area,[16] working as a jail trustee, etc.

114. The strip and visual body cavity searches were so prevalent and commonplace that it appears to amount to an official policy of the jail.

115. On January 12, 2018, the trial court appointed an attorney ("Nick Meyer") to represent Merisier.

116. Understandably, having never been previously incarcerated, Merisier was visibly dismayed and distraught by the event. During the first and only attorney-client conference at the Denton County Jail between the two, Merisier informed Mr. Meyer that she was not interested in a plea because she was not guilty of the charged offense.

117. In light of the minor charge (a non-violent state-jail felony), Merisier further informed Mr. Meyer to move the court for a bond so as to allow her to be released

---

[14] Most of those court hearings were always continued or cancelled before Merisier was able to enter the courtroom. Most were blank trips where Merisier ended up spending hours in cold courthouse holdover cells.
[15] Tuberculosis ("TB") shots visits and others.
[16] Plaintiff was summoned to the booking area for a number of reasons, including bond hearings, etc.

from jail to resume her normal life and specially to attend to her minor children, one of whom in need of daily medications due to a serious congenital disease.

118.    Mr. Meyer advised Merisier that the prosecutor—ADA Michael Dickens—was not willing to set bail. When Merisier, who was previously pro se, told Mr. Meyer that it was within the province of the trial judge to set bail, Mr. Meyer restated in resounding tone that both the trial judge *and* prosecutor was not willing to set bail and reminded Merisier of the Judge's order of capias, which scribbled in big capital font letter "NO BOND!"

119.    **The reason for NO BOND?**: in the words of Mr. Meyer  because "they [judge & prosecutor] are afraid that upon release, you would continue writing motions to the court." Mr. Meyer further contended that Merisier had two choices: 1) elect to go to trial in less than 10 days while remained incarcerated or 2) sign a plea deal to get out of jail.

120.    Merisier, who was unwavering of her innocence and adamant that she was not going to plead guilty, became visibly upset and began crying, especially having already missed out on spending the Christmas holiday with her family.

121.    Mr. Meyer, seemly annoyed by (or perhaps mindlessly gleeful at another non-retaining client's unfortunate plight) Merisier's "pitiful" sobs, threw her a curve ball when he made the following exhortations: "I'm not here for your pity party." When Merisier responded that she wanted to go home, Mr. Meyer, apparently unable to contain his sadism, responded, "I wanna (sic) win the lotto but you don't see me crying about it."

122.    Mr. Meyer went on irascibly and explained that Merisier was making his life difficult by not wiling to make a decision and that a "pity party" was not what he was

here for. As Merisier sat there sobbing and distraught over what she already heard, Mr. Meyer remarked, "you are guilty and you know it!" and left.

123.    Merisier became extremely concerned—rightly so—after having been pummeled and maligned by her own court-appointed shyster. She immediately contacted a family member who quickly hired a private retained counsel ("Emmanuel Albarado").

124.    Mr. Albarado was retained for the purpose of moving the trial court to grant bail (to allow Merisier to fight her case while she is out on bail), and either to obtain a pretrial dismissal or to take case all the way to trial.

125.    Mr. Albarado promised to have the court grant bail, and even offered to also represent Plaintiff who was then incarcerated at the Johnson County Jail.

126.    On January 19, 2018, acting on the recommendation and goading of the trial judge to amend the indictment to pursue charges of child endangerment/abandonment,[17] Defendant Dickens file a Motion for State to Provide DFPS records.

127.    Defendant Dickens threatened to charge Merisier and Plaintiff with child endangerment/abandonment in case Merisier refused to sign a plea deal.

128.    On January 22, 2018, Merisier filed a Motion to Set Bail or Bond, but was informed by former counsel that ADA Dickens and judge Burgess will not entertain any hearing in the case unless a plea negotiation is agreed upon prior to the hearing.

129.    Because Merisier continued to maintain her innocence and refused to plead guilty, each time Merisier rejects the prosecution's offer, the hearing was reset for

---

[17] During the December 19, 2017 hearing, the trial judge pressed the prosecutor, Michael Dickens to file child endangerment/abandonment charges against Plaintiff and his wife, Ms. Merisier.

another appearance by court staff and Merisier ordered back to her jail cells while being subjected to body strip and cavity search upon each return to her jail cell.

130.   Merisier was not allowed to appear before the trial court Judge Burgess unless she agrees to plead guilty.

131.   Finally, on February 26, 2018, the day Mr. Albarado entered his appearance on the case, Merisier was under the impression she was about to be granted bail or a hearing on bail.

132.   Instead, former counsel (Mr. Albarado) informed Merisier that the sole purpose of the proceeding was for the court to elicit a guilty plea.

133.   Merisier was devastated. Former counsel further informed Merisier that the trial court judge (Burgess) and Assistant District Attorney (Dickens) were not amenable to any bond hearing and echoed the very same choices ADA Dickens was said to have given to Merisier through former court-appointed shyster Nick Meyer: 1) elect to go to trial in less than 10 days while remained incarcerated or 2) sign a plea deal to get out of jail.

134.   Mr. Albarado explained that his hands were tied and that there were no other alternatives. He further explained in great elaboration that the prosecutor's primary concern in refusing to entertain a bond hearing, much less granting bail, is the fact that Merisier will be writing too much motions to the court.

135.   Upon information and belief, Steve Burgess and Michael Dickens believed Plaintiff was the preparer and drafter of Merisier's pretrial motions to the trial court. In their quest to prevent Merisier from exercising her right to Self-Representation, and access to the court, Defendant Michael Dickens, having learned that Plaintiff had an

27

outstanding capias from Johnson County, hatched a scheme—in collaboration with Johnson County officials—to have the couple (Merisier & Jeanty) arrested.

136. Upon information and belief, Judge Steve Burgess had at least a tacit understanding with Defendant Dickens to then commit Merisier to ordered pretrial detention to coerce her into a plea of guilty.

137. Upon information and belief, Steve Burgess and Michael Dickens conspired to confine Merisier to pretrial detention indefinitely in order to coerce her into pleading guilty to an alleged crime she did not commit.

138. Defendants' purpose extended beyond jailing and illegally securing a guilty plea. As it has been well documented, the consequences of confinement, even a few days of pretrial detention, extend beyond the harm and shame inherent in the jail time itself. There is always a corollary: a person detained even for a few days may lose income or employment due to missing work days. That same individual will default on rent or mortgage and get evicted. Still that same individual may lose custody of her children because of inability to arrange for child care.

139. This is exactly what occurred in this case. Having been incarcerated for nearly 40 days, income and savings depleted and no longer financially capable of affording to retain the service of a then live-in nanny to care for the couple's children, coupled with angst and anguish that befell her in attempting to obtain justice at the mercy of incompetent court-appointed and retained lawyers and their sadistic *schadenfreude* ilks, Merisier was left with no choice but to enter a plea deal lest she would be languished in jail and her children became a ward of the State—an outcome fervently wanted by ADA Michael Dickens and Steve Burgess.

140.    In the end, Merisier was coerced and badgered by her own attorneys into abandoning her earlier refusal to plead guilty lest she'd incarcerated indefinitely.

141.    Plaintiff believe Defendants' intention was not only to violate Merisier's right to effective counsel (through self-representation) by jailing her to coerce a guilty plea, but also to deprive the couple of their natural right to keep and care for their children.

142.    Steve Burgess' intention to deprive the couple of their children was made clear on December 19, 2019 when he inquired of, or rather solicited, Defendant Michael Dickens to file a child endangerment charges against the couple.[18]

143.    It is Plaintiff's contentions that the couple became target of a conspiracy by Burgess and Dickens for the following reasons: Merisier (1) repudiated the bogus *Competence to Stand Trial Examination* report by Defendant Kelly Goodness and filed a complaint with the State Board of Examiners of Psychologists, (2) filed a complaint with the State Bar of Texas against Plaintiff's former counsel Chris Abel, (3) filed well-argued, legally sound pleadings with the trial court that were likely to overturn (on appeal) any of the trial court bias ruling unfavorable to Merisier.

144.    It is quite telling how the ADA Dickens and Judge Burgess never voiced any concern regarding whether Merisier was a flight risk or danger to the community.

---

[18] The rank hypocrisy is palpably laughable. One the one hand, Burgess' courtroom histrionics or feigned hypersensitivity in regards to the couple's children—who were allegedly neglected, endangered, abandoned or otherwise—were absent when he ordered the pretrial detention of Merisier to coerce her into pleading guilty, the collateral consequences of which would have eventually caused the children to become wards of the state. Even more disturbing is the fact that all it took was the lying words of one lone cop—Jason Stevens—for a sitting judge, who took an oath to uphold the law and be impartial, to accuse parents, whom he (judge) has no idea or inkling into how they conduct their private lives, of maltreatment and endangerment.

Upon information and belief, Steve Burgess' and Michael Dickens' decision to order pretrial detention was solely based on the fact that Merisier was writing "too many motions to the court."

145.   It is to be noted further that Merisier had to retain the services of an attorney outside of Denton County for her appeal, for she was afraid of the good "old boys network" in Denton County might have caused any attorney hired in that jurisdiction to throw her case in favor of prosecution and judge.[19]

146.   As a Prosecutor, Defendant Dickens is ethically obligated to protect people who are innocent until proven guilty, cooperate with pretrial release arrangements, avoid illegitimate and unnecessary delays, and above all, ensure that criminal defendants' rights are protected.[20]

147.   During research for this action, it is revealed that Defendant NFM has been engaging in surreptitious oral interception of shoppers since it opened its doors to the public in 2015.[21]

148.   Therefore, the interception in this case was not an isolated incident. The recording equipment was the property of and installed by Defendant NFM.

---

[19] (e.g., Merisier's last attorney—Albarado—told her she had reserved her right to appeal when in fact he knowingly made her signed plea documents that waived her right to appeal).

[20] *See.* ABA Prosecution Function Standard 3-1.2(b) ("The prosecutor should seek to protect the innocent and convict the guilty, consider the interests of victims and witnesses, and respect the constitutional and legal rights of all persons, including suspects and defendants."); Standard 3-2.9(b) ("A prosecutor should not intentionally use procedural devices for delay for which there is no legitimate basis."); Standard 3-3.10 ("The prosecutor should cooperate in good faith in arrangements for release under the prevailing system for pretrial release.")

[21] Touting its sleuthing capabilities as a result of more than 1000 cameras throughout the store and other technological advantages. *See.* https://stores.org/2017/04/05/nebraska-furniture-mart-reduces-fraud-and-increases-customer-safety/

149.    Defendant Casey McGregor has also touted his resume online, and showed off his arrest records during his tenure at NFM.[22]

150.    Upon information and belief, Defendant McGregor's arrests (as of March 2016) comprised mostly of minority suspects, predominantly African Americans.

151.    Upon information and belief, Defendant NFM through McGregor, have been engaging in racial profiling by accusing minority customers of theft, and thereby, detain, arrest, and surreptitiously audibly and visually recorded them without probable cause and without authority of law and use those unauthorized audio recordings to effect their prosecution.

152.    Upon information and belief, Defendant, Edward Lipsett, as NFM store director, has ratified McGregor's practice of profiling, detaining, arresting minority shoppers without probable cause.

153.    Upon information and belief, Defendant, Edward Lipsett, as NFM store director, has also ratified McGregor's practice of illegally audio-video recording shoppers suspected of shoplifting or theft without probable cause and using the illegally acquired audio and video interceptions of those accused to prosecute them.

154.    During Merisier's pretrial hearing, McGregor testified that the Colony Police Department entered into a "partnership" with NFM to audio-video record unsuspecting shoppers who are detained or arrested by McGregor and NFM.

---

[22]https://www.linkedin.com/in/casey-mcgregor-cfi-1a87a66b ("I have detained/arrested 49 suspects for fraudulent activity.")

155.   Upon information and belief, ancillary to this matter but relevant to issues of pattern and pervasiveness of the type of conduct being complained of, Defendant Stevens has been found to have used excessive force under color of law.

156.   Specifically, on August 14, 2018, pursuant to State's Notice of Potential *Brady* Information, Defendant ADA Dickens disclosed that "On November 20, 2017, Officer Jason Stevens received a sustained finding of Use of Force from The Colony Police Department. Officer Stevens responded to a burglary call and immediately fired his weapon upon an individual opening a door to the building prior to identifying the individual."

157.   On November 27, 2018, Plaintiff reviewed discovery in his Denton County pending criminal proceedings for the first time.

158.   On November 27, 2018, Plaintiff learned through discovery, inter alia, that the couple's encounter with Defendants NFM, McGregor and Jason Stevens on November 9, 2015 was audio and video recorded without their knowledge or consent.

159.   Plaintiff watched the video, and upon seeing the ordeal the couple and their minor children endured at the hands of NFM security guards and the colony police officials, have been emotionally devastated for the video is chilling and hard to watch.

160.   Plaintiff also learned that Defendants NFM and its employee McGregor used the audio and video recordings and disclosed the same to several state actors (i.e., Denton County District Attorney's Office, Denton County Attorney's Office, The Colony Police Department) who, in turn, disclosed the same intra-agency and to the Plaintiff's former and current attorney.

161.    On November 27, 2018, Plaintiff learned through discovery of an examination report prepared by Defendant Kelly Goodness, which sought to defame and besmirch Plaintiff's character, reputation and standing in the community and to sway the jury in both then a competency jury trial and soon-to-be guilt/innocent phase of trial.

162.    Defendant Goodness was appointed by the District Court of Denton County to perform an examination of Plaintiff regarding his competency to stand trial.

163.    Plaintiff, at the time, wheelchair-bound, nonverbal, was wheeled into Defendant Goodness's office by his wife—Plaintiff Merisier, and a transport service personnel.

164.    At the outset of the sham examination (as recounted by Plaintiff's wife, Merisier), Defendant Goodness introduced herself and announced the purpose of the examination. When attempted to obtain an affirmative response from Plaintiff (who was nonverbal) regarding her remarks, Merisier interjected on Plaintiff's behalf to inform Defendant Goodness that Plaintiff hasn't been verbal since his hospitalization for seizure and possible stroke. Defendant Goodness interrupted midsentence and rudely exclaimed "I'm not talking to you! Let him answer!" Defendant Goodness proceeded and said to Plaintiff that "I know you can hear and understand" and further advised Plaintiff that he'll be going away to a maximum-security prison for a very long time whether or not he chose to talk to her. Defendant Goodness then abruptly concluded the examination with this admonishment: "I will prepare a report to the court based on what I already know about him." When Merisier pressed Defendant Goodness to elaborate on what exactly she meant by "already knew about him," Defendant Goodness retorted that she "heard it all

from his attorney[23]" but declined to elaborate further. Defendant Goodness then asked if Plaintiff self-fed, to which Merisier answered in the negative and told Goodness that she (Merisier) has been feeding Plaintiff mostly liquid to facilitate digestion since Plaintiff seemed to have difficulties with solid foods. Merisier also made it clear to Defendant Goodness that she decided to stay home to tend to his care with the assistance of Plaintiff's brother who moved in with the couple.

165.    The entire examination lasted no more than 4 minutes. The August 25, 2016 examination cannot be deemed an "examination," as that term would ordinarily be understood by a lay person, much less a forensic examination. Defendant Goodness only laid eyes on Plaintiff for no more than 4 minutes with no verbal exchange between them. Notwithstanding the unusual brief encounter between Examiner (Goodness) and Patient (Plaintiff) and the apparent inability of the latter to understand and engage in the examination, Defendant Goodness continued directing her remarks and inquiries to him under the assumption that he understood. Defendant Goodness then proceeded to badger him with threats of incarceration and deportation.

166.    In spite of the brief office visit, and without the benefit of examining/interviewing Plaintiff, Defendant Goodness manufactured a damaging, grossly prejudicial report—largely based on falsehoods, racial animus, xenophobia, anti-criminal implicit and personal biases[24]—which not only greatly undermine Plaintiff's right to a

---

[23] Defendant Goodness was referring to Attorney Chris Abel who, on September 23, 2016 (following the report by Kelly), stated loudly in open court to the prosecutor "he's [the patient] fucking faking." This is clear indication that when Ms. Goodness mentioned "she heard it all from his attorney," it is a Freudian slip that confirmed her objectivity appears compromised by commenting on his competency with his Shyster/ lawyer pre-examination.

[24] Extensive research has documented the disturbing effects of implicit racial biases in a

fair trial, but also defame and besmirch Plaintiff's character and standing in the community.

167.    In her report, Defendant Goodness asserted, inter alia, that Plaintiff was "malingering" to avoid conviction, prison and deportation; that Merisier was unable to take care of Plaintiff by herself despite of, and largely ignoring, the fact that Merisier made it clear that Plaintiff's brother had moved in with the couple to assist in Plaintiff's care. Merisier had also informed Defendant Goodness that the services of a live-in nurse was retained to assist with the care of Plaintiff.

168.    Defendant Goodness, seemingly an amateur sleuth, also made conclusory findings critical of Merisier in which she accused Merisier of using an alias.[25] Even an innocent error in the hospital record, which shows Plaintiff's name transposed, was immediately pounced upon by Defendant Goodness to attribute some sort of sinister motives.

169.    During his mental and physical incapacitation, Plaintiff had a peculiar tic, which included blank stares, searching look at ceilings, walls and other visuals in his immediate surroundings. From the moment Plaintiff was wheeled into Defendant Goodness's office, he (Plaintiff) kept staring piercingly around the room. The entire time Defendant Goodness was directing remarks at him, Plaintiff alternated between a blank

---

variety of realms ranging from classrooms to courtrooms to hospitals. *See.* www.kirwaninstitute.osu.edu/research/understanding-implicit-bias/
[25] Due to the fact that hospital record shows Merisier's phone number as the contact number for a Tina Joseph, Plaintiff's sister who met Merisier on the scene when Plaintiff caught the April 16, 2016 violent seizure at Costco, which led to Plaintiff's hospitalization. Understandably distraught at the sight of the unconscious Plaintiff being worked on by paramedic, Ms. Joseph, Plaintiff's sister, provided next of kin's information to emergency personnel and paramedic by providing her name, but Merisier's phone number.

stare and a searching look on his face. This is a usual habit of the patient that Plaintiff's medical doctors and family can attest to.

170.    Defendant Goodness, in furtherance of her nefarious agenda to deny Plaintiff Due Process, deliberately misconstrued this tic and opined that Plaintiff's eyes grew big when told he will be going to a maximum security prison for a long time.

171.    Assuming *arguendo* that Plaintiff was "malingering" and understood Defendant Goodness when the latter opined Plaintiff was going to maximum prison for a long time, it is an incontrovertible fact that Plaintiff's education (holder of a Juris Doctorate) and legal background (seasoned in civil, criminal, immigration, commercial litigation) belie Defendant Goodness' nonsensical assertions that Plaintiff's "eyes grew big" when told he was going to maximum prison for a long time. Plaintiff Jeanty *knows* the law, and thus would have been fully aware of the maximum punishment a state jail felony carries. On the other hand, Defendant Goodness does not know the law.[26] Period.

172.    Defendant Goodness' does not have an inkling of the American jurisprudence, much less legal knowledge surpassing that of Plaintiff.

173.    Upon information and belief, Defendant Goodness has no children of her own. In her twisted demented desire to wrest custody of the couple's children and to improperly influence the court to impose stiff penalty on Plaintiff, Defendant Goodness, unable to tame her racial animus and hatred toward blacks and minorities alike, opined that Plaintiff had no regards for his children and that he was a career criminal.

---

[26] Perhaps, in Defendant Goodness's world, being in the natural métier of bilking Uncle Sam of a few hundred dollars for preparing spurious psycho-babble reports must have magically morphed her mere sciolistic knowledge of the law into appropriating herself as a lawyer.

36

174.    Defendant Goodness also alleges in her report that there were missing pages in Plaintiff's medical record, effectively imputing sinister motives on the part of the couple as to the alleged missing pages. In fact, the allegation of missing pages was a fabrication by Defendant Goodness.

175.    Defendant Goodness completed her report concluding Jeanty did not suffer from any mental retardation and was in fact very well educated, a conclusion in stark contrast to those provided by Jeanty's neurologist, psychiatrist and other medical professionals.

176.    Upon information and belief, Defendant Goodness' entire report was a deliberate fabrication of evidence, orchestrated to influence the jury in Plaintiff Jeanty's then scheduled competency jury trial and soon-to-be guilt/innocent criminal trial.

177.    Merisier's criminal prosecution for the felony charged offense of Possession of Identifying Information (Case No. F16-886-158) and misdemeanor charged offense of Failure To Appear (Case No. CR-2016-05890-D) have been finalized and all appeals have been exhausted in regards to these charges.

178.    Plaintiff's criminal prosecution for the charged offense of Possession of Identifying Information (Case No. F16-887-158) is currently pending in the 158th Judicial District Court—Denton County, Texas.

179.    As to date, Plaintiff has not been arraigned on the aforementioned charged offense.

180.    On or about early December 2017, after undergoing intensive speech, physical and occupational therapy, Plaintiff showed signs of improvement and has gradually regained full mental health and intellectual acuity.

181.   On May 8, 2018, Plaintiff was acquitted of the alleged False Report offense from Johnson County.

182.   Plaintiff has filed a federal suit against the Johnson County officials and various other federal and private actors in the United State District Court, Northern District of Texas. (Case No. 3:18-cv-2497-B-BN).

183.   Following Plaintiff's acquittal, upon information and belief, the Johnson County Attorney's Office and chief prosecutor Stuart Madison has been communicating with Denton County District Attorney, Michael Dickens who is the lead prosecutor in Plaintiff's current criminal matter in Denton County.

184.   Upon information and belief, the communication between Michael Dickens and Stuart Madison and other county officials is for the sole purpose of depriving Plaintiff of his right to pursue his pending civil rights claims against the Johnson County officials (Case No. 3:18-cv-2497-B-BN) and to deter any possible future suit against Denton County officials.

185.   According to discovery notations between Dickens and Johnson county officials, discussions of Plaintiff's removal from the United States was entertained and the parties concluded that any conviction (whether on the Johnson county or Denton County offense) would have secured Plaintiff's removal from the United States.

186.   Discovery notations also revealed that due to lack of evidence, Michael Dickens had no intention of bringing criminal charges against Plaintiff and his wife. However, upon Plaintiff's release from DHS custody on January 16, 2016, Michael Dickens, decided to bring criminal charges against Plaintiff (and wife) to secure a conviction by coercion so as to effect Plaintiff's removal from the United States.

38

187.    Upon information and belief, Michael Dickens harbor racist views and animus toward blacks and other racial minorities and was instrumental in the harassment, demotion and firing of a black assistant prosecutor from the Denton County District Attorney's Office.

188.    Upon information and belief, ADA Dickens is said to be in the habit of always requesting exorbitant bond amount and stiff jail sentences as to minorities defendants.

189.    Perhaps, feeling hamstrung by lack of evidence for the current charge as plead in the indictment, Defendant Dickens recently filed a Motion to Amend the indictment.

**FEDERAL WIRETAP CLAIMS**

**COUNT I**
**Unlawful Interception of Casey McGregor's**
**Interrogation of Plaintiff Against Defendant Casey McGregor & NFM**

190.    Plaintiff repeats, re-alleges, and incorporates herein each of the preceding and following paragraphs as if fully set forth herein.

191.    On November 9, 2015, Defendants McGregor and NFM intentionally *intercepted* or procured another to intercept the oral communications of Plaintiff with McGregor in violation of 18 U.S.C. § 2511(1)(a).

192.    Plaintiff was not aware of, and did not consent to, the interception and recording.

193.    Plaintiff did not willingly participate in the conversation or interrogation with the Defendants.

194.    Instead, Plaintiff was detained, patted down, handcuffed, arrested, and forced back into the store—all executed by private citizen security guards—to be interrogated by NFM's Casey McGregor and later by a Texas Peace Officer Jason Stevens.

195.    Plaintiff did not reasonably expect to be recorded, for he had a reasonable expectation of privacy in the back office of the NFM and was not in a police station.

196.    There were no signs posted in the office or the area leading to said office, which would have warned Plaintiff that his encounter with the Defendants was subjected to electronic monitoring and recordings.

197.    Thus, Plaintiff's oral communications was intentionally intercepted by Defendants McGregor and NFM in violation of 18 U.S.C. §2520(a).

198.    Defendant McGregor and NFM intentionally intercepted the oral communication with the express *intent to harm and injure* the Plaintiff in that Defendants' surreptitious recording of McGregor's interrogation with the Plaintiff was, inter alia, for the purpose of committing these *criminal* acts,[27] to wit:

The NFM Defendants were not acting under the authority of the state in apprehending, detaining, searching or questioning Plaintiff. **First**, "reasonable suspicion" to detain applies to law enforcement not private citizen. In fact, private citizens are not allowed to perform *Terry*-stop-and-frisk.[28] *See. Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Wade v. State*, 422 S.W.3d 661 (Tex. Crim. App. 2013);

---

[27]18 U.S.C. § 2511(2)(d).
[28] Except under limited circumstances. *See*. Article 18.16 of Texas Code of Criminal Procedure.

*Balentine v. State*, 71 S.W.3d 763 (Tex. Crim. App. 2002). *See also*, *Garner v. State*, 779 S.W.2d 498, 501 (Tex. App.—Fort Worth 1989).

**Second**, the initial apprehension and detention of Plaintiff by the security officers was in the nature of a citizen's arrest. Citizen arrest in Texas requires that the arrest must be for a public offense committed or attempted in the presence of the citizen making and effecting the arrest. In this State, a Citizen Right to Arrest is limited to 4 exceptions.[29] Plaintiff did not commit any crime, much less a crime in the presence of the citizens who effected the arrest in this case. The arrest was therefore an illegal citizen arrest. *Miles v. State*, 241 S.W.3d 28 (Tex. Crim. App. 2007). *See also*, *Turner v. State*, 901 S.W.2d 767, 772 (Tex. App. 1995); *Ramos v. State*, No. 01-12-00957-CR (Texas Court of Appeals, April. 22, 2014) (citing *Woods*); *Andrade v. State*, 6 S.W.3d 584 (Tex. App. 1999) (citing *Woods* and *Turner*); *Garner v. State*, 779 S.W.2d 498, 501 (Tex. App.—Fort Worth 1989, no pet.); *Irvin v. State*, 563 S.W.2d 920 (Tex. Crim. App. 1978); *Hill v. State*, 641 S.W.2d 543, 544 (Tex. Crim. App. 1982); *Woods v. State*, 152 Tex.Crim. 338, 213 S.W.2d 685, 687 (1948). All in all, Plaintiff asserts that the detention and arrest was illegal because the Defendants did not have a warrant and the arrest did not fall within one of the exceptions to the warrant requirement as set forth in chapter 14 of the code of criminal procedure. Therefore the detention and arrest was a ***criminal*** offense in that it

---

[29]**(1)** A "warrant of arrest" has been issued for the offender and the court has, by name, specifically authorized the citizen to take the offender into custody. *See*. Texas Code of Criminal Procedure Article 15.01; **(2)** A peace officer has commanded the citizen to assist him in the execution of a search warrant that also orders the arrest of the offender. *See*. *Id*. Articles 18.03 & 18.08; **(3)** The offender has stolen personal property, and the citizen is attempting to prevent the consequences of theft by seizing the property and the offender. *Id*. Art. 18.16; **(4)** The offender has committed a felony or an offense against the public peace in presence or view of the citizen. *Id*. Art. 14.01; or **(5)** the offender has committed an offense against the public peace in his presence or view. *Id*. *See also*, *Andrade v. State*, 6 S.W.3d 584, 589 (Tex. App. 1999).

constitutes "Unlawful Restraint" under Texas law, punishable as a Class A misdemeanor. *See.* Texas Penal Code § 20.02(a)[30] and (c).

      **Third,** The unlawful restraint[31] of Plaintiff's minor children was a criminal offense punishable as a State Jail Felony if the individual restrained is under the age of 17. *See.* Texas Penal Code § § 20.02(a) and 20.02 (c)(1).

      **Fourth,** Defendants planned and then endeavored to disclose *and* use the contents of the oral communication for the purpose of spurring false arrest and wrongful prosecution of plaintiff knowing or having reason to know that the information was obtained through an unlawful interception in violation of 18 U.S.C. § 2511(1)(c)-(d) (Federal Wiretap) and Texas Penal Code §16.02(b)(2)-(3) (the State of Texas analog of the preceding Federal Wiretap Act's provisions). Defendants has in fact disclosed the unlawful interception to the State of Texas *and* used the same in the prosecution of Plaintiff by giving testimonies pertaining to the contents of the unlawful interception during grand jury. *Id.*[32]

      **Fifth,** Defendant's purpose for, but independent of, the interception was the *aiding and abetting* of the State of Texas to *disclose* and *use*—in violation of 18 U.S.C. § 2511(1)(c)-(d) and Texas Penal Code §16.02(b)(2)-(3)—the intercepted communication

---

[30] "A person commits an offense if he intentionally or knowingly restrains another person." Texas Penal Code § 20.02(a).

[31] To "restrain" means "to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person." *Id.* § 20.01(1) (West 2011). Finally, restraint is "without consent" when it is accomplished by "(A) force, intimidation, or deception; or (B) any means, including acquiescence of the victim, if: (i) the victim is a child who is less than 14 years of age... and the parent ... has not acquiesced in the movement or confinement ...." Id. § 20.01(1)(A), (B)(i).

[32] Putting it succinctly, Plaintiff avers that the interception of a communication for purposes of public disclosure and use is in itself an unlawful and tortious purpose.

to cause the arrest and future prosecution of Plaintiff. The aiding and abetting is a criminal act under Federal (18 U.S. Code § 2) and Texas (Title 2 Chapter 7) penal statutes.

**Sixth**, in furtherance of the attainment of said purpose, Defendants committed the following concurrent criminal acts: False Report to a Peace Officer[33] under Texas Penal Code § 37.08; False Alarm or Report[34] under Texas Penal Code § 42.06; Blackmail under 18 U.S. Code § 873 and Extortion under 18 U.S.C. § 875(d)[35].

199.    Defendants intentionally intercepted the oral communication with the express *intent to harm and injure* the Plaintiff in that Defendants' surreptitious recording of McGregor's interrogation with the Plaintiff was also for the purpose of committing a *tortious* act,[36] to wit:

**First**, the criminal acts of unlawful restraint of Plaintiff and Plaintiff's children (see criminal acts 1 through 3, *supra*, at ¶ 198) states a private civil cause of action for False Imprisonment, ergo, tortious. The elements of a False Imprisonment claim in Texas are: 1) willful detention; 2) without consent; and 3) without authority of law.[37]

---

[33]Having illegally searched, detained and arrested Plaintiff and didn't find any evidence of theft as reported to the police, Defendant's purpose of the recording was a subterfuge to find evidence of the *alleged* theft by confession through coercion and intimidation.

[34] When Defendant failed to extract or secure a confession of criminal act, Defendant knowingly reported an offense (theft) to the police that he knew was false and baseless and that would ultimately cause action by an official;

[35] The recording was made so that law enforcement official could be furnished with evidence of Plaintiff involvement in the alleged theft. Defendants' illegal citizen detention, arrest of Plaintiff and the unlawful restraint of the latter's children to coerce and intimidate him into a confession constituted blackmail and extortion.

[36] 18 U.S.C. § 2511(2)(d).

[37] *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002); *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 645 (Tex. 1995); *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex. 1985) (Analyzing the essential elements of false imprisonment).

**Second,** Plaintiff avers that the interception of Plaintiff's communication for purposes of public disclosure (to the State of Texas via the DA's office) and use (for the prosecution of Plaintiff) as laid out in criminal acts 4, ¶ 198, *supra*, is in itself a tortious purpose because the acts provide a private right of action for such disclosure and use pursuant to 18 U.S.C. § 2511(1)(c) and d.

**Third,** the Defendants' criminal acts 5 of aiding and abetting (paragraph 198, *supra*) the State of Texas to disclose and use—in violation of 18 U.S.C. § 2511(1)(c)-(d) and Texas Penal Code §16.02(b)(2)-(3)—the intercepted communication to cause the arrest and future prosecution of Plaintiff is tortious under the Federal and Texas state common law.

**Fourth,** in its quest to uncover evidence of criminal activity, Defendants defamed (a tortious act) the Plaintiff when Defendants knowingly reported an offense (theft) to the police that they knew was false and baseless and that would ultimately cause action by an official.

**Fifth**, Defendant's unlawful arrest and the *forced custodial interrogation* of Plaintiff constitute the tort of unlawful citizen search (i.e., invasion of privacy), and thus, were tortious.

**Sixth**, Defendant made threatening remarks of arrest and prosecution to Plaintiff. Defendant then took a photograph of Plaintiff to distribute and post throughout the store or loss prevention department and warned the latter not to return to the store ever again. The purpose of the photograph was to publicly embarrass Plaintiff, to blackmail him into a confession for an alleged theft, which he did not commit.

**Seventh**, Plaintiff's false imprisonment occurred immediately prior to and contemporaneously with the surreptitious illegal recording, which evinces the predicate mens rea that Defendants' purpose of the interception was an attempt to capture incriminating evidence for the malicious criminal prosecution of Plaintiff. In sum, the surreptitious recording was made for the purpose of extracting—or rather *extorting* evidence from Plaintiff to justify or otherwise make lawful Defendants' unlawful detention and arrest of Plaintiff for an alleged crime (theft), which never occurred.

**Eight**, the interrogation of Plaintiff by Defendant constitutes "custodial interrogation" (albeit by a private citizen) for it was conducted as a "joint action" with the State[38]. The surreptitious interception, the purpose for which, was an *unlawfully search*[39] to gather and collect evidence of criminal activity for arrest and prosecution of Plaintiff. Not to mention, it was a coerced submission to a search since Plaintiff was detained, arrested and involuntarily brought back to the store by physical force.

**Ninth**, Defendant *solicited* another person (i.e., the State of Texas) to disclose and use the oral communication in order to prosecute Plaintiff in violation of Article 18.20 or Chapter 16, Penal Code, (i.e., § 16.02 (b)(2) and (3)), and thus, tortious pursuant to 18.20 § 16(a) of Texas Code of Criminal Procedure.

---

[38] *See. Wilkerson v. State*, 173 S.W.3d 521, 529-530 (Tex. Crim. App. 2005) ("whether CPS caseworker, teacher, preacher, probation officer, or mere family friend—is, in fact, working for or on behalf of the police by interrogating a person in custody, that agent is bound by all constitutional and statutory confession rules, including *Miranda* and Article 38.22."). *See also*, *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241-42 (5th Cir. 1999) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 2754-55, 73 L.Ed.2d 482 (1982) (outlining formulas in determining when private conduct may be charged to the state).
[39] A search implies an examination of one's premises or person with a view to the discovery of contraband and or evidence of guilt to be used in prosecution of a criminal action. The term implies exploration investigation or question. *Matter of Bates*, 555 S.W.2d 420, 435 (Tex. 1977).

**Tenth**, Defendants' unlawful restraint of Plaintiff was also a form of Assault and Battery under Texas law and was both criminal and tortious. There are two elements of assault and battery in Texas: 1) intentionally, knowingly, or recklessly; and 2) causing bodily injury to another, threatening another with imminent bodily injury, or *causing physical contact with another when you know or should reasonably believe that the other will regard the contact as offensive or provocative.*[40]

**Eleventh,** Duress. Because Plaintiff was illegally handcuffed, searched, detained, arrested and brought back to the store for interrogation, Defendant's continued prolong detention of Plaintiff in its private office constitutes unlawful restraint/false imprisonment. Thus, Defendants' interrogation of Plaintiff was coerced as he was under duress of physical constraints. The surreptitious recording of Defendants' interrogation of Plaintiff was pre-arranged, planned and orchestrated so as allow Defendants to capture incriminating statements from Plaintiff while under duress for the purpose of causing false arrest and malicious prosecution. Duress is a tortious act in Texas.

200.    Although Defendant McGregor's various criminal or tortious acts may have arguably implicate (or not) the Fourth Amendment (even if the Court determines they involved purely private action and not police misconduct) they nevertheless were also in violation of Article 38.23 of the Texas Code of Criminal Procedure,[41] and thus, constitute both criminal and tortious acts.

---

[40] *See*. Tex. Penal Code Ann. § 22.01(a). The definition of assault is the same whether it is used pursuant to criminal prosecution or civil suit for damages. *Morgan v. City of Alvin*, 175 S.W.3d 408, 418 (Tex. App.-Houston [1 st Dist.] 2004, no pet.).

[41] *See* Tex.Code Crim.Proc.Ann. Art. 38.23(a)(West 2005) (providing that No evidence obtained by an officer or ***other person*** in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of

201.    The fact that Defendants had already arrested Plaintiff on suspicion of theft, did not find evidence of theft, but decided to surreptitiously recorded McGregor's interrogation of Plaintiff while Plaintiff was handcuffed, detained/arrested, coupled with his children unlawfully restrained, taken away and prevented to have any physical contact with Plaintiff and Plaintiff's wife, and yet still took an incriminating mugshot of him to be posted throughout the store to be depicted as a persona non grata and trespasser demonstrated an express purpose on the part of Defendants to violate Plaintiff's civil rights by intimidation, threat of prosecution, extraction of confession by blackmail, defamation and to publicly embarrass him.

202.    WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant Casey McGregor and NFM in the following terms: **(a)** Statutory Damages of $100 per day for each day of the violation pursuant to 18 U.S.C. § 2520(c)(2)(B); or Statutory Damage of $10,000 *if* that is larger than the $100 per day. *See id.* **(b)** Punitive Damages in excess of One million ($1,000,000.00) dollars. *See.* 18 U.S.C. § 2520(b)(2); **(c)** Costs for filing and preparation of this suit in an amount to be determined by the court. *See.* 18 U.S.C. § 2520(b)(3).

**COUNT II**
**Unlawful Disclosure & Use Against**
**Defendants NFM & Casey McGregor**
**(viz: Disclosure to The Colony Police Department)**

203.    Plaintiff repeats, realleges, and incorporates herein each of the preceding and following paragraphs as if fully set forth herein.

---

America, shall be admitted in evidence against the accused on the trial of any criminal case. (Emphasis added).

204.    On an unknown date, but prior to the return of an April 1, 2016 indictment by a grand jury (CAUSE NO. F16-887-158), Defendants NFM & Casey McGregor intentionally **disclosed** the contents of Plaintiff's oral communication to The Colony Police Department and its officers, one of whom, Jason Stevens, and **used** (when reviewed and analyzed the contents and compiled relevant portions to be copied/reproduced for the latter Defendants) the same in violation of 18 U.S.C. § 2511(1)(c) and d.

205.    Defendants knew[42] or had reason to know that the contents of Plaintiff's oral communication was obtained through an illegal interception. *Id*.

206.    Defendants' disclosure *and* use of Plaintiff's oral communications was in violation of 18 U.S.C. §2520(a).

207.    WHEREFORE, Plaintiff prays for judgment in his favor and against the Defendants NFM & Casey McGregor, in the following terms:

For the "Disclosure" of the oral communication: **(a)** Statutory Damages of $100 per day for each day of the violation pursuant to 18 U.S.C. § 2520(c)(2)(B); or Statutory Damage of $10,000 *if* that is larger than the $100 per day. *See id*; **(b)** Punitive Damages in excess of One million ($1,000,000.00) dollars. *See*. 18 U.S.C. § 2520(b)(2); **(c)** Costs

---

[42] Because they had to review (i.e., play) the contents of the recordings for relevant evidence and make notations to prepare and edit it prior to disclosing it to the State. Upon review, the contents of the recording patently revealed that (1) Plaintiff was not a willing participant to the interrogation and was not aware of the recording; (2) Officer Stevens, a party to the communication, was not aware of the recording, much less had given his consent prior to the interception; (3) Officer Stevens was not acting under color of law, for he neither *Mirandize* nor provided the warning laid out in Article 38.22 Sec. 3 of Texas Code of Criminal Procedure to the Plaintiff *prior* to the statements; (4) Officer Stevens did not have a warrant and (4) Plaintiff was not in a police station or police vehicle.

for filing and preparation of this suit in an amount to be determined by the court. *See*. 18 U.S.C. § 2520(b)(3).

For the "Use" of the oral communication: **(a)** Statutory Damages of $100 per day for each day of the violation pursuant to 18 U.S.C. § 2520(c)(2)(B); or Statutory Damage of $10,000 *if* that is larger than the $100 per day. *See id*. ; **(b)** Punitive Damages in excess of One million ($1,000,000.00) dollars. *See*. 18 U.S.C. § 2520(b)(2); **(c)** Costs for filing and preparation of this suit in an amount to be determined by the court. *See*. 18 U.S.C. § 2520(b)(3).

## COUNT III
### Unlawful Disclosure & Use Against Defendants
### NFM, Casey McGregor, The Colony Police Department & Jason Stevens
### (viz: Disclosure to the Denton County District Attorney's Office
### & ADA Michael Dickens)

208.    Plaintiff repeats, realleges, and incorporates herein each of the preceding and following paragraphs as if fully set forth herein.

209.    On an unknown date, but prior to the return of an April 1, 2016 indictment by a grand jury (CAUSE NO. F16-887-158), the named Defendants intentionally ***disclosed*** the contents of Plaintiff's oral communication to Defendants Denton County District Attorney's Office & ADA Michael Dickens and ***used*** (when reviewed and analyzed the contents and compiled relevant portions to be copied/reproduced for the latter Defendants) the same in violation of 18 U.S.C. § 2511(1)(c) and d.

210.    Defendants knew (*See*. ¶ 205, n. 42 *supra*) or had reason to know that the contents of Plaintiff's oral communication was obtained through an illegal interception. *Id*.

211.    Defendants' disclosure *and* use of Plaintiff 's oral communications was in violation of 18 U.S.C. §2520(a).

212.    WHEREFORE, Plaintiff prays for judgment in his favor and against the named Defendants, in the following terms:

For the "Disclosure" of the oral communication: **(a)** Statutory Damages of $100 per day for each day of the violation pursuant to 18 U.S.C. § 2520(c)(2)(B); or Statutory Damage of $10,000 *if* that is larger than the $100 per day. *See id.*; **(b)** Punitive Damages in excess of One million ($1,000,000.00) dollars. *See.* 18 U.S.C. § 2520(b)(2); **(c)** Costs for filing and preparation of this suit in an amount to be determined by the court. *See.* 18 U.S.C. § 2520(b)(3).

For the "Use" of the oral communication: **(a)** Statutory Damages of $100 per day for each day of the violation pursuant to 18 U.S.C. § 2520(c)(2)(B); or Statutory Damage of $10,000 *if* that is larger than the $100 per day. *See id.*; **(b)** Punitive Damages in excess of One million ($1,000,000.00) dollars. *See.* 18 U.S.C. § 2520(b)(2); **(c)** Costs for filing and preparation of this suit in an amount to be determined by the court. *See.* 18 U.S.C. § 2520(b)(3).

**COUNT IV**
**Unlawful Disclosure & Use Against Defendants**
**Denton County District Attorney's Office & Michael Dickens**
**(viz: Disclosure to the Grand Jury Proceedings to Secure Indictment)**

213.    Plaintiff repeats, realleges, and incorporates herein each of the preceding and following paragraphs as if fully set forth herein.

214.    On an unknown date, but prior to the return of an April 1, 2016 indictment by a grand jury (CAUSE NO. F16-887-158), the named Defendants intentionally

***disclosed*** and ***used*** the contents of Plaintiff's oral communication to a grand jury convened to indict the Plaintiff in violation of 18 U.S.C. § 2511(1)(c) and d.

215.    Defendants knew (*See*. ¶ 205, n. 42 *supra*) or had reason to know that the contents of Plaintiff's oral communication was obtained through an illegal interception. *Id.*

216.    Defendants' disclosure *and* use of Plaintiff's oral communications was in violation of 18 U.S.C. §2520(a).

217.    WHEREFORE, Plaintiff prays for judgment in his favor and against the named Defendants, in the following terms:

For the "Disclosure" of the oral communication: **(a)** Statutory Damages of $100 per day for each day of the violation pursuant to 18 U.S.C. § 2520(c)(2)(B); or Statutory Damage of $10,000 *if* that is larger than the $100 per day. *See id.*; **(b)** Punitive Damages in excess of One million ($1,000,000.00) dollars. *See*. 18 U.S.C. § 2520(b)(2); **(c)** Costs for filing and preparation of this suit in an amount to be determined by the court. *See*. 18 U.S.C. § 2520(b)(3).

For the "Use" of the oral communication: **(a)** Statutory Damages of $100 per day for each day of the violation pursuant to 18 U.S.C. § 2520(c)(2)(B); or Statutory Damage of $10,000 *if* that is larger than the $100 per day. *See id.*; **(b)** Punitive Damages in excess of One million ($1,000,000.00) dollars. *See*. 18 U.S.C. § 2520(b)(2); **(c)** Costs for filing and preparation of this suit in an amount to be determined by the court. *See*. 18 U.S.C. § 2520(b)(3).

**COUNT V**
**Unlawful Disclosure Against Defendants**
**Denton County District Attorney's Office & Michael Dickens**
**(viz: to former Defense Counsel Christopher Abel)**

218.    Plaintiff repeats, realleges, and incorporates herein each of the preceding and following paragraphs as if fully set forth herein.

219.    On an unknown date, Defendant Denton County District Attorney's Office & Michael Dickens intentionally ***disclosed*** the contents of Plaintiff's oral communication to former Defense Counsel Christopher Abel in violation of 18 U.S.C. § 2511(1)(c).

220.    Defendants knew (because they had to review it) or had reason to know that the contents of Plaintiff's oral communication was obtained through an illegal interception. *Id.*

221.    Defendants' disclosure of Plaintiff's oral communications was in violation of 18 U.S.C. §2520(a).

222.    WHEREFORE, Plaintiff prays for judgment in his favor and against the named Defendants, in the following terms:

For the "Disclosure" of the oral communication: **(a)** Statutory Damages of $100 per day for each day of the violation pursuant to 18 U.S.C. § 2520(c)(2)(B); or Statutory Damage of $10,000 *if* that is larger than the $100 per day. *See id.*; **(b)** Punitive Damages in excess of One million ($1,000,000.00) dollars. *See.* 18 U.S.C. § 2520(b)(2); **(c)** Costs for filing and preparation of this suit in an amount to be determined by the court. *See.* 18 U.S.C. § 2520(b)(3).

<u>COUNT VI</u>
**Unlawful Disclosure Against Defendants**
**Denton County District Attorney's Office & Michael Dickens**
**(viz: Disclosure to Defense Counsel Ervette P. Sims)**

223.    Plaintiff repeats, realleges, and incorporates herein each of the preceding and following paragraphs as if fully set forth herein.

224.    On or about October 2018, Defendant Denton County District Attorney's Office & Michael Dickens intentionally ***disclosed*** the contents of Plaintiff's oral communication to Plaintiff's present legal counsel, Ervette P. Sims, in violation of 18 U.S.C. § 2511(1)(c).

225.    Defendants knew (because they had to review it) or had reason to know that the contents of Plaintiff's oral communication was obtained through an illegal interception. *Id.*

226.    Defendants' disclosure of Plaintiff's oral communications was in violation of 18 U.S.C. §2520(a).

227.    WHEREFORE, Plaintiff prays for judgment in his favor and against the named Defendants, in the following terms:

For the "Disclosure" of the oral communication: **(a)** Statutory Damages of $100 per day for each day of the violation pursuant to 18 U.S.C. § 2520(c)(2)(B); or Statutory Damage of $10,000 *if* that is larger than the $100 per day. *See id.*; **(b)** Punitive Damages in excess of One million ($1,000,000.00) dollars. *See.* 18 U.S.C. § 2520(b)(2); **(c)** Costs for filing and preparation of this suit in an amount to be determined by the court. *See.* 18 U.S.C. § 2520(b)(3).

**COUNT VII**
**Unlawful Disclosure Against Defendants**
**Denton County District Attorney's Office & Michael Dickens**
**(viz: Disclosure during Discovery to Plaintiff)**

228.    Plaintiff repeats, realleges, and incorporates herein each of the preceding and following paragraphs as if fully set forth herein.

229.    On November 27, 2018, Defendants  Denton County District Attorney's Office & Michael Dickens intentionally *disclosed* the contents of Plaintiff's oral communication to Plaintiff through the latter's attorney. Plaintiff reviewed the contents of the interception by playing the recording during discovery. The disclosure was made by Defendants Denton County District Attorney's Office & Michael Dickens in violation of 18 U.S.C. § 2511(1)(c).

230.    Defendants knew (because they had to review it) or had reason to know that the contents of Plaintiff's oral communication was obtained through an illegal interception. *Id.*

231.    Defendants' disclosure of Plaintiff's oral communications was in violation of 18 U.S.C. §2520(a).

232.    WHEREFORE, Plaintiff prays for judgment in his favor and against the named Defendants, in the following terms:

For the "Disclosure" of the oral communication: **(a)** Statutory Damages of $100 per day for each day of the violation pursuant to 18 U.S.C. § 2520(c)(2)(B); or Statutory Damage of $10,000 *if* that is larger than the $100 per day. *See id.*; **(b)** Punitive Damages in excess of One million ($1,000,000.00) dollars. *See.* 18 U.S.C. § 2520(b)(2); **(c)** Costs for filing and preparation of this suit in an amount to be determined by the court. *See.* 18 U.S.C. § 2520(b)(3).

**TEXAS WIRETAP CLAIMS**

### COUNT VIII
### Unlawful Interception of Casey McGregor's
### Interrogation of Plaintiff Against Defendants McGregor & NFM

233.    Plaintiff repeats, realleges, and incorporates herein each of the preceding and following paragraphs as if fully set forth herein.

234.    On November 9, 2015, Defendants McGregor and NFM intentionally *intercepted* or procured another to intercept the oral communications of Plaintiff with McGregor in violation of Texas Penal Code § 16.02 (b)(1).

235.    Defendants McGregor and NFM *intercepts* or employs or obtains another to intercept the oral communications of Plaintiff in violation of Tex. Civ. Prac. & Rem.Code § 123.002(a)(1).

236.    Plaintiff was not aware of, and did not consent to, the interception and recording.

237.    Plaintiff did not willingly participate in the conversation or interrogation with the Defendants.

238.    Instead, Plaintiff was detained, patted down, handcuffed, arrested, and forced back into the store—all executed by private citizen security guards—to be interrogated by NFM's Casey McGregor and later by a Texas Peace Officer Jason Stevens.

239.    Plaintiff did not reasonably expect to be recorded, for he had a reasonable expectation of privacy in the back office of the NFM and was not in a police station.

240.     There were no signs posted in the office or the area leading to said office, which would have warned Plaintiff that his encounter with the Defendants was subjected to electronic monitoring and recordings.

241.     Thus, Plaintiff's oral communications was intercepted by Defendants in violation of Tex. Civ. Prac. & Rem.Code § 123.002(a)(1).

242.     The communication was intercepted for the purpose of committing unlawful acts. *See*. Texas Penal Code § 16.02(c)(4)(B). In this instance, the unlawful[43] acts are laid out in Count I, ¶¶ 198-199, *supra*, respectively.

243.     WHEREFORE, Plaintiff prays for judgment in his favor and against the Defendants NFM & McGregor in the following terms: **(a)** Statutory Damages of Ten Thousand Dollars ($10,000 dollars) pursuant to Tex. Civ. Prac. & Rem.Code § 123.004(2); **(b)** Actual Damages in excess of Ten Thousand Dollars ($10,000 dollars) pursuant to Tex. Civ. Prac. & Rem.Code § 123.004(3); **(c)** Punitive Damages. *See*. Tex. Civ. Prac. & Rem.Code § 123.004(4); and **(d)** costs for preparation of this suit in an amount to be determined by the court. *See*. Tex. Civ. Prac. & Rem.Code § 123.004(5).

**COUNT IX**
**Unlawful Disclosure & Use Against**
**Defendants NFM & Casey McGregor**
**(viz: Disclosure to The Colony Police Department)**

244.     Plaintiff repeats, realleges, and incorporates herein each of the preceding and following paragraphs as if fully set forth herein.

245.     On an unknown date, but prior to the return of an April 1, 2016 indictment by a grand jury (CAUSE NO. F16-887-158), Defendants NFM & Casey McGregor

---

[43] "Unlawful" means *criminal* or *tortious* or *both* and includes what would be criminal or tortious but for a defense not amounting to justification or privilege. *See*. Texas Penal Code § 1.07(a)(48).

intentionally *disclosed* the contents of Plaintiff's oral communication to The Colony Police Department and its officers, one of whom, Jason Stevens, and *used* (when reviewed and analyzed the contents and compiled relevant portions to be copied/reproduced for the latter Defendants) the same in violation of Texas Penal Code § 16.02 (b)(2) and (3).

246.   Defendants knew (*See.* ¶ 205, n. 42 *supra*) or had reason to know that the contents of Plaintiff's oral communication was obtained through an illegal interception. *Id.*

247.   Defendants' uses *and* divulges information that they knew or reasonably should have known was obtained by interception of the communication in violation of Tex. Civ. Prac. & Rem.Code § 123.002(a)(2).

248.   WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant NFM & Casey McGregor in the following terms:

For the "Uses" of the oral communication: **(a)** Statutory Damages of Ten Thousand Dollars ($10,000 dollars) pursuant to Tex. Civ. Prac. & Rem.Code § 123.004(2); **(b)** Actual Damages in excess of Ten Thousand Dollars ($10,000 dollars) pursuant to Tex. Civ. Prac. & Rem.Code § 123.004(3); **(c)** Punitive Damages. *See.* Tex. Civ. Prac. & Rem.Code § 123.004(4); and **(d)** costs for preparation of this suit in an amount to be determined by the court. *See.* Tex. Civ. Prac. & Rem.Code § 123.004(5).

For the "Divulges" of the oral communication: **(a)** Statutory Damages of Ten Thousand Dollars ($10,000 dollars) pursuant to Tex. Civ. Prac. & Rem.Code § 123.004(2); **(b)** Actual Damages in excess of Ten Thousand Dollars ($10,000 dollars) pursuant to Tex. Civ. Prac. & Rem.Code § 123.004(3); **(c)** Punitive Damages. *See.* Tex.

Civ. Prac. & Rem.Code § 123.004(4); and **(d)** costs for preparation of this suit in an amount to be determined by the court. *See.* Tex. Civ. Prac. & Rem.Code § 123.004(5).

**COUNT X**
**Unlawful Disclosure & Use Against Defendants**
**NFM, Casey McGregor, The Colony Police Department & Jason Stevens**
**(viz: Disclosure to the Denton County District Attorney's Office**
**& ADA Michael Dickens)**

249.    Plaintiff repeats, realleges, and incorporates herein each of the preceding and following paragraphs as if fully set forth herein.

250.    On an unknown date, but prior to the return of an April 1, 2016 indictment by a grand jury (CAUSE NO. F16-887-158), the named Defendants intentionally *disclosed* the contents of Plaintiff's oral communication to Defendants Denton County District Attorney's Office & ADA Michael Dickens and *used* (when reviewed and analyzed the contents and compiled relevant portions to be copied/reproduced for the latter Defendants) the same in violation of Texas Penal Code § 16.02 (b)(2) and (3).

251.    Defendants knew (*See.* ¶ 205, n. 42 *supra*) or had reason to know that the contents of Plaintiff's oral communication was obtained through an illegal interception. *Id.*

252.    Defendants' uses *and* divulges information that they knew or reasonably should have known was obtained by interception of the communication in violation of Tex. Civ. Prac. & Rem.Code § 123.002(a)(2).

253.    WHEREFORE, Plaintiff prays for judgment in his favor and against the named Defendants, in the following terms:

254.    WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant NFM & Casey McGregor in the following terms:

58

For the "Uses" of the oral communication: **(a)** Statutory Damages of Ten Thousand Dollars ($10,000 dollars) pursuant to Tex. Civ. Prac. & Rem.Code § 123.004(2); **(b)** Actual Damages in excess of Ten Thousand Dollars ($10,000 dollars) pursuant to Tex. Civ. Prac. & Rem.Code § 123.004(3); **(c)** Punitive Damages. *See*. Tex. Civ. Prac. & Rem.Code § 123.004(4); and **(d)** costs for preparation of this suit in an amount to be determined by the court. *See*. Tex. Civ. Prac. & Rem.Code § 123.004(5).

For the "Divulges" of the oral communication: **(a)** Statutory Damages of Ten Thousand Dollars ($10,000 dollars) pursuant to Tex. Civ. Prac. & Rem.Code § 123.004(2); **(b)** Actual Damages in excess of Ten Thousand Dollars ($10,000 dollars) pursuant to Tex. Civ. Prac. & Rem.Code § 123.004(3); **(c)** Punitive Damages. *See*. Tex. Civ. Prac. & Rem.Code § 123.004(4); and **(d)** costs for preparation of this suit in an amount to be determined by the court. *See*. Tex. Civ. Prac. & Rem.Code § 123.004(5).

## COUNT XI
### Unlawful Disclosure & Use Against Defendants
### Denton County District Attorney's Office & Michael Dickens
### (viz: Disclosure to Grand Jury Proceedings to Secure Indictment)

255.    Plaintiff repeats, realleges, and incorporates herein each of the preceding and following paragraphs as if fully set forth herein.

256.    On an unknown date, but prior to the return of an April 1, 2016 indictment by a grand jury (CAUSE NO. F16-887-158), the named Defendants intentionally *disclosed* and *used* the contents of Plaintiff's oral communication to a grand jury convened to indict the Plaintiff in violation of Texas Penal Code § 16.02 (b)(2) and (3).

257.    Defendants knew (because they had to review it) or had reason to know that the contents of Plaintiff's oral communication was obtained through an illegal interception. *Id.*

258.    Defendants' uses *and* divulges information that they knew or reasonably should have known was obtained by interception of the communication in violation of Tex. Civ. Prac. & Rem.Code § 123.002(a)(2).

259.    WHEREFORE, Plaintiff prays for judgment in his favor and against the named Defendants, in the following terms:

260.    WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant NFM & Casey McGregor in the following terms:

For the "Uses" of the oral communication: **(a)** Statutory Damages of Ten Thousand Dollars ($10,000 dollars) pursuant to Tex. Civ. Prac. & Rem.Code § 123.004(2); **(b)** Actual Damages in excess of Ten Thousand Dollars ($10,000 dollars) pursuant to Tex. Civ. Prac. & Rem.Code § 123.004(3); **(c)** Punitive Damages. *See.* Tex. Civ. Prac. & Rem.Code § 123.004(4); and **(d)** costs for preparation of this suit in an amount to be determined by the court. *See.* Tex. Civ. Prac. & Rem.Code § 123.004(5).

For the "Divulges" of the oral communication: **(a)** Statutory Damages of Ten Thousand Dollars ($10,000 dollars) pursuant to Tex. Civ. Prac. & Rem.Code § 123.004(2); **(b)** Actual Damages in excess of Ten Thousand Dollars ($10,000 dollars) pursuant to Tex. Civ. Prac. & Rem.Code § 123.004(3); **(c)** Punitive Damages. *See.* Tex. Civ. Prac. & Rem.Code § 123.004(4); and **(d)** costs for preparation of this suit in an amount to be determined by the court. *See.* Tex. Civ. Prac. & Rem.Code § 123.004(5).

<u>COUNT XII</u>
**Unlawful Disclosure & Use Against Defendants
NFM, Casey McGregor, The Colony Police Department, Jason Stevens,
Denton County District Attorney's Office & Michael Dickens
(viz: Disclosure to the Denton County Attorney's Office)**

261.    Plaintiff repeats, realleges, and incorporates herein each of the preceding and following paragraphs as if fully set forth herein.

262.    On an unknown date, the named Defendants intentionally ***disclosed*** the contents of Plaintiff's oral communication to Denton County Attorney's Office in violation of Texas Penal Code § 16.02 (b)(2).

263.    Defendants knew (because they had to review it) or had reason to know that the contents of Plaintiff's oral communication was obtained through an illegal interception. *Id.*

264.    Defendants' disclosure of Plaintiff's oral communications was in violation of Tex. Civ. Prac. & Rem.Code § 123.002(a)(2).

265.    WHEREFORE, Plaintiff prays for judgment in his favor and against the named Defendants, in the following terms:

For the "Divulges" of the oral communication: **(a)** Statutory Damages of Ten Thousand Dollars ($10,000 dollars) pursuant to Tex. Civ. Prac. & Rem.Code § 123.004(2); **(b)** Actual Damages in excess of Ten Thousand Dollars ($10,000 dollars) pursuant to Tex. Civ. Prac. & Rem.Code § 123.004(3); **(c)** Punitive Damages. *See.* Tex. Civ. Prac. & Rem.Code § 123.004(4); and **(d)** costs for preparation of this suit in an amount to be determined by the court. *See.* Tex. Civ. Prac. & Rem.Code § 123.004(5).

**COUNT XIII**
**Unlawful Disclosure Against Defendants**
**Denton County District Attorney's Office & Michael Dickens**
**(viz: Disclosure to former Defense Counsel Christopher Abel)**

266.    Plaintiff repeats, realleges, and incorporates herein each of the preceding and following paragraphs as if fully set forth herein.

267.    On an unknown date, Defendant Denton County District Attorney's Office & Michael Dickens intentionally *disclosed* the contents of Plaintiff's oral communication to former Defense Counsel Christopher Abel in violation of Texas Penal Code § 16.02 (b)(2).

268.    Defendants knew (because they had to review it) or had reason to know that the contents of Plaintiff's oral communication was obtained through an illegal interception. *Id.*

269.    Defendants' disclosure of Plaintiff's oral communications was in violation of Tex. Civ. Prac. & Rem.Code § 123.002(a)(2).

270.    WHEREFORE, Plaintiff prays for judgment in his favor and against the named Defendants, in the following terms:

For the "Divulges" of the oral communication: **(a)** Statutory Damages of Ten Thousand Dollars ($10,000 dollars) pursuant to Tex. Civ. Prac. & Rem.Code § 123.004(2); **(b)** Actual Damages in excess of Ten Thousand Dollars ($10,000 dollars) pursuant to Tex. Civ. Prac. & Rem.Code § 123.004(3); **(c)** Punitive Damages. *See*. Tex. Civ. Prac. & Rem.Code § 123.004(4); and **(d)** costs for preparation of this suit in an amount to be determined by the court. *See*. Tex. Civ. Prac. & Rem.Code § 123.004(5).

**COUNT XIV**
**Unlawful Disclosure Against Defendants**
**Denton County District Attorney's Office & Michael Dickens**
**(viz: Disclosure to current Defense Counsel Ervette P. Sims)**

271.    Plaintiff repeats, realleges, and incorporates herein each of the preceding and following paragraphs as if fully set forth herein.

272.    On or about October 2018, Defendant Denton County District Attorney's Office & Michael Dickens intentionally *disclosed* the contents of Plaintiff's oral communication to current Counsel Ervette P. Sims in violation of Texas Penal Code § 16.02 (b)(2).

273.    Defendants knew (because they had to review it) or had reason to know that the contents of Plaintiff's oral communication was obtained through an illegal interception. *Id.*

274.    Defendants' disclosure of Plaintiff's oral communications was in violation of Tex. Civ. Prac. & Rem.Code § 123.002(a)(2).

275.    WHEREFORE, Plaintiff prays for judgment in his favor and against the named Defendants, in the following terms:

For the "Divulges" of the oral communication: **(a)** Statutory Damages of Ten Thousand Dollars ($10,000 dollars) pursuant to Tex. Civ. Prac. & Rem.Code § 123.004(2); **(b)** Actual Damages in excess of Ten Thousand Dollars ($10,000 dollars) pursuant to Tex. Civ. Prac. & Rem.Code § 123.004(3); **(c)** Punitive Damages. *See.* Tex. Civ. Prac. & Rem.Code § 123.004(4); and **(d)** costs for preparation of this suit in an amount to be determined by the court. *See.* Tex. Civ. Prac. & Rem.Code § 123.004(5).

63

## COUNT XV
**Unlawful Disclosure Against Defendants**
**Denton County District Attorney's Office & Michael Dickens**
**(viz: Disclosure—Discovery to Plaintiff)**

276.     Plaintiff repeats, realleges, and incorporates herein each of the preceding and following paragraphs as if fully set forth herein.

277.     On November 27, 2018, Defendants Denton County District Attorney's Office & Michael Dickens intentionally ***disclosed*** the contents of Plaintiff's oral communication to Plaintiff through the latter's attorney. Plaintiff reviewed the contents of the interception by playing the recording during discovery. The disclosure was made by Defendants Denton County District Attorney's Office & Michael Dickens in violation of Texas Penal Code § 16.02 (b)(2).

278.     Defendants knew (because they had to review it) or had reason to know that the contents of Plaintiff's oral communication was obtained through an illegal interception. *Id.*

279.     Defendants' disclosure of Plaintiff's oral communications was in violation of Tex. Civ. Prac. & Rem.Code § 123.002(a)(2).

280.     WHEREFORE, Plaintiff prays for judgment in his favor and against the named Defendants, in the following terms:

For the "Divulges" of the oral communication: **(a)** Statutory Damages of Ten Thousand Dollars ($10,000 dollars) pursuant to Tex. Civ. Prac. & Rem.Code § 123.004(2); **(b)** Actual Damages in excess of Ten Thousand Dollars ($10,000 dollars) pursuant to Tex. Civ. Prac. & Rem.Code § 123.004(3); **(c)** Punitive Damages. *See.* Tex. Civ. Prac. & Rem.Code § 123.004(4); and **(d)** costs for preparation of this suit in an amount to be determined by the court. *See.* Tex. Civ. Prac. & Rem.Code § 123.004(5).

## COUNT XVI
### Unlawful Interception, Disclosure or Use
### under Article 18.20 § 16 of Texas Code of Criminal Procedure

281.    Plaintiff repeats, realleges, and incorporates herein each of the preceding and following paragraphs as if fully set forth herein.

282.    The Plaintiff hereby realleges and incorporates the allegations of Counts I, VIII ("**Interceptions**"), Counts II through VII, IX through XV ("**Disclosures**" and/or "**Uses**") as though fully set forth herein, replacing only Chapter 123 of the Texas Civil Practice and Remedies Code ("TCPRC") with Article 18.20, § 16 of the Texas Code of Criminal Procedure ("TCCP") for recovery of civil damages.

283.    WHEREFORE, Plaintiff prays for judgment in his favor and against each of the named Defendants for *each* Interception, *each* Disclosure and *each* Use in the aforementioned counts in the following terms: **(a)** Liquidated damages of $100 a day for each day of violation or $1,000; **(b)** Punitive Damages in excess of One million ($1,000,000.00) dollars; **(c)** Costs for filing and preparation of this suit. *See.* Article 18.20, § 16(a)(1), (2) and (3) respectively.

## COUNT XVII
### NFM Solicits Another Person to Intercept, Disclose or Use
### under Article 18.20 § 16 of Texas Code of Criminal Procedure

284.    Plaintiff repeats, realleges, and incorporates herein each of the preceding and following paragraphs as if fully set forth herein.

285.    The Plaintiff hereby realleges and incorporates the allegations of Counts I, VIII ("**Interceptions**"), Counts II through VII, IX through XV ("**Disclosures**" and/or "**Uses**") as though fully set forth herein, replacing only Chapter 123 of the Texas Civil

Practice and Remedies Code ("TCPRC") with Article 18.20, § 16 of the Texas Code of Criminal Procedure ("TCCP") for recovery of civil damages.

286.    In sum, Plaintiff asseverates that Defendant NFM solicited both McGregor (to intercept, disclose and use) and The Colony Police Department, Denton County District Attorney's Office, Denton County Attorney's Office (collectively the "State of Texas") (to disclose and use) Plaintiff's oral communication in violation of Chapter 16, Penal Code and Article 18.20 § 16 of Texas Code of Criminal Procedure.

287.    WHEREFORE, Plaintiff prays for judgment in his favor and against each of the named Defendants for each Solicitation to Interception, Disclosure and Use in the aforementioned counts in the following terms:, **(a)** Liquidated damages of $100 a day for each day of violation or $1,000; **(b)** Punitive Damages in excess of One million ($1,000,000.00) dollars; **(c)** Costs for filing and preparation of this suit. *See.* Article 18.20, § 16(a)(1), (2) and (3) respectively.

## COUNT XVIII
### Invasion of Privacy—Intrusion Upon Seclusion
### Against The NFM Defendants

288.    Plaintiff repeats, realleges, and incorporates herein each of the preceding and following paragraphs as if fully set forth herein.

289.    Defendants NFM and Casey McGregor intentionally intruded upon the privacy of Plaintiff when they illegally and surreptitiously intercepted his oral communication in violation of 18 U.S.C. § 2511(1)(a), (c)-(d); Texas Penal Code § 16.02 (b)(1), (2)-(3); Tex. Civ. Prac. & Rem.Code § 123.002(a)(1); Article 18.20 § 16 of Texas Code of Criminal Procedure.

290.   Plaintiff's communication was also videotaped by Defendant, which constitutes "greater intrusion on privacy than audio surveillance." *US v. Lee*, 359 F.3d 194, 202 (3d Cir. 2004).

291.   The defendant had a reasonable expectation to be free from hidden video surveillance because the video search was directed straight at him.

292.   The intrusion was highly offense, for Defendant not only *physically searched* Plaintiff's person, but *detained*, and *citizen-arrested* Plaintiff and took him back to the NFM's private office by force (an intrusion in and of itself)[44] to be interrogated.

293.   Following the illegal seizure, wrongful search and arrest of Plaintiff, Defendant further invaded his privacy by secretly audio and video taped his communication in violation of 18 U.S.C. § 2511(1)(a), 18 U.S.C. §2520(a); Texas Penal Code § 16.02 (b)(1), Tex. Civ. Prac. & Rem.Code § 123.002(a)(1); 18.20, § 16(a)(1) of the Texas Code of Criminal Procedure ("TCCP").

294.   Contemporaneous with said intrusion, Plaintiff was not able to tend to both his then 8 month old and 4 year old sons whom the Defendant unlawfully restrained.

295.   WHEREFORE, Plaintiff prays for judgment in his favor and against each of the named Defendants in the following terms: **(a)** Actual Damages in the amount of One Hundred Thousand ($100,000.00) **(b)** Exemplary Damages in excess of One million

---

[44] *Milner v. Red River Valley Pub. Co.*, 249 S. W.2d 227, 229 (Tex.Civ.App. no writ). (recognized that some of the right of privacy interests have been afforded protection under such traditional theories as libel and slander, *wrongful search* and *seizure*, *eavesdropping* and *wiretapping*, and other similar invasions into the private business and personal affairs of an individual). (Emphasis added).

($1,000,000.00) dollars; and **(c)** costs for filing and preparation of this suit in an amount

to be determined by the court.

**COUNT XIX**
**Civil Conspiracy To Disclose and Use**
**Unlawful Interception of Oral Communications Against NFM, The Colony**
**Police Department, Denton County District Attorney's Office, Jason Stevens &**
**Casey McGregor**

296.   Plaintiff repeats, realleges, and incorporates herein each of the preceding

and following paragraphs as if fully set forth herein.

297.   On November 9, 2015, the NFM Defendants surreptitiously recorded

Plaintiff's oral communication in violation of 18 U.S.C. § 2511(1)(a), (c)-(d); Texas

Penal Code § 16.02 (b)(1), (2)-(3); Tex. Civ. Prac. & Rem.Code § 123.002(a)(1); Article

18.20 § 16 of Texas Code of Criminal Procedure.

298.   Having unable to secure evidence of theft as falsely reported to the police,

the NFM Defendants accused Plaintiff to be in Possession of Identifying Information.

299.   Defendant Stevens prepared an affidavit of Probable Cause in which he

falsely attested that Plaintiff was in possession of identifying information in violation of

Texas Penal Code 32.51.

300.   In their quest to secure an indictment, Defendants NFM, The Colony

Police, Denton County District Attorney's Office, Jason Stevens & Casey McGregor

conspired to disclose and use Plaintiff's oral communication in violation of 18 U.S.C. §

2511(1)(a), (c)-(d); Texas Penal Code § 16.02 (b)(1), (2)-(3); Tex. Civ. Prac. &

Rem.Code § 123.002(a)(1); Article 18.20 § 16 of Texas Code of Criminal Procedure.

301. Defendants had a meeting of the minds in that though they knew the interception was unlawful, they agreed to disclose and use it against Plaintiff to unlawfully prosecute him.

302. Plaintiff was subsequently charged with the offense of "Possession of Identifying Information" Texas Penal Code 32.51 after Defendants disclosed and used the oral communication to sway a grand jury to return a true bill of indictment on April 1, 2016. (Cause No. F16-887-158).

303. During the criminal proceedings, the Defendants developed animus toward Plaintiff and all the named Defendants conspired to disclose and use the oral communications in order to sway a jury to secure the conviction of Plaintiff.

304. The Defendants knew (they had to review it) and had reason to know that the contents of Plaintiff's oral communication was unlawfully intercepted but intentionally, with willful disregard of the law, decided to disclose and use the communication to show consciousness of guilt in a desperate attempt to secure a conviction.

305. The video is hard to watch and Defendants' actions have caused Plaintiff severe mental anguish and emotional distress.

306. WHEREFORE, Plaintiff prays for judgment in her favor and against each of the named Defendants in the following terms: **(a)** Actual Damages in the amount of One Hundred Thousand ($100,000.00) **(b)** Exemplary Damages in excess of One million ($1,000,000.00) dollars; and **(c)** costs for filing and preparation of this suit in an amount to be determined by the court.

## COUNT XX
**Preliminary & Permanent Injunctive Relief Against Defendant Denton County District Attorney's Office Pursuant to Federal Wiretap Act, Texas Wiretap Act & Texas Code of Criminal Procedure**

307.     Plaintiffs repeats, realleges, and incorporates herein each of the preceding and following paragraphs as if fully set forth herein.

308.     Defendant Denton County District Attorney's Office has introduced the intercepted communication before a grand jury proceedings in obtaining Plaintiff's felony indictment.

309.     Defendant Denton County District Attorney's Office intends to make use of the intercepted communication in Plaintiff's criminal proceedings in Denton County in the 158th Judicial District Court of Texas (Cause No. F16-886-158).

310.     Plaintiff will be subject to invasion of his privacy and irreparable injury if Defendant is allowed to disclose and use the oral communication in the criminal proceedings against Plaintiff.

311.     Plaintiff will be subject to continuous and irreparable injury and invasion of his privacy if Defendants are allowed to expose his communications to others.

312.     "Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in ***any trial***, hearing, or other proceeding in or before any court, grand jury . . . . if the disclosure of that information would be in violation of this chapter." 18 U.S.C. § 2515 (Emphasis added); 18 U.S.C. §  2518(10)(a)[45]; 18 U.S. Code

---

[45] (a) Any aggrieved person in ***any*** trial, hearing, or ***proceeding in*** or ***before any court,*** . . . . may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that—(i) the communication was unlawfully intercepted; (Emphasis added).

§ 2520(b)(1)[46]; *See also*, Civil Practice and Remedies Code § 123.004(1)[47]; Texas Code of Criminal Procedure Art. 18.20 § 2(a)(1)-(2).[48]

313.   Plaintiff asseverates that there is no other remedy at law, for Defendants have heretofore conspired and intended to continue said conspiracy to disclose and use the unlawful interception to injure Plaintiff.

314.   WHEREFORE, Plaintiff prays for equitable relief against Defendant Denton County District Attorney's Office, and any of its agents and employees in that Plaintiff requests this Court to **(1)** enjoin the said Defendant from using, disclosing, mentioning, or otherwise make references to any of the contents of the unlawful intercepted communications until the Court rule on the unlawfulness of the interception in this case; **(2)** Plaintiff further requests that the court grants a permanent injunction upon a finding that the interception was unlawful.

---

[46] In an action under this section, appropriate relief includes—(1) such *preliminary* and other *equitable* or *declaratory* relief as may be appropriate. (Emphasis added).

[47] A person who establishes a cause of action under this chapter is entitled to: (1) an *injunction* prohibiting a further interception, attempted interception, or divulgence or use of information obtained by an interception; (Emphasis added).

[48] Prohibition of Use as Evidence of Intercepted Communications
Sec. 2.   (a) The contents of an intercepted communication and evidence derived from an intercepted communication may be received in evidence *in any trial, hearing, or other proceeding in or before any court, grand jury*, department, officer, agency, regulatory body, legislative committee, or other authority of the United States *or of this state or a political subdivision of this state unless*:
(1) the communication was intercepted in violation of this article, Section 16.02, Penal Code , or federal law; or
(2) the disclosure of the contents of the intercepted communication or evidence derived from the communication would be in violation of this article, Section 16.02, Penal Code , or federal law. (Emphasis Added).

## COUNT XXI
### Declaratory Relief Against NFM &
### Denton County District Attorney's Office Pursuant to
### Federal Wiretap Act, Texas Wiretap Act & Texas Code of Criminal Procedure

315.    Plaintiff repeats, realleges, and incorporates herein each of the preceding and following paragraphs as if fully set forth herein.

316.    Upon information and belief, Defendants have disclosed and used the intercepted communication in grand jury proceeding to obtain indictments of Plaintiff in violation of 18 U.S.C. § 2515; 18 U.S.C. § 2520(b)(1)[49]. *See also*, Civil Practice and Remedies Code § 123.004(1); Texas Code of Criminal Procedure Art. 18.20 § 2(a)(1)-(2).

317.    Upon information and belief, the intercepted communication is not an isolated incident. Defendant NFM has been engaging in unlawful surreptitious interception of communication against many unsuspecting customers and others it accused of crimes since it opened its doors to the public on May 7, 2015.

318.    WHEREFORE, Plaintiff requests that the Court grants declaratory relief and  **(1)** declare that in the case at bar, the oral interception was unlawful; **(2)** declare that any disclosure or use of the intercepted communication in any trial, hearing or proceeding in Denton County in the 158th judicial district Court of Texas (Cause No. F16-887-158) is illegal; **(2)** declare that any disclosure or use of the intercepted oral communication is unlawful under both the Federal & Texas Wiretap Acts and the Texas Code of Criminal Procedure Art. 18.20 § 2(a)(1)-(2); **(3)** declare that NFM's secret program of surreptitious recordings of oral communications of those who frequent its stores or accused of crimes

---

[49] In an action under this section, appropriate relief includes—(1) such *preliminary* and other *equitable* or *declaratory* relief as may be appropriate. (Emphasis added).

in its stores to be unlawful unless it clearly advise in forms of signages, written and verbal/oral warnings that the accused are subject to recordings.

## COUNT XXII
### Unlawful Restraint/False Imprisonment
### Against Defendants NFM & McGregor

319.    Plaintiff repeats, realleges, and incorporates herein each of the preceding and following paragraphs as if fully set forth herein.

320.    On November 9, 2015, McGregor forcefully restrained Plaintiff and took the latter to a room designated as "detention room" and kept him there for over two hours.

321.    Defendant McGregor intentionally and knowingly restrained and falsely imprisoned Plaintiff in violation of Texas penal code § 20.02(a).

322.    The restraint was without Plaintiff's consent. *See.* Texas penal code § 20.01(1).

323.    Defendant McGregor detained and arrested Plaintiff without reasonable suspicion or exception enumerated in Tex. Civ. Prac. & Rem.Code § 124.001 and without probable cause.

324.    The unlawful restraint proximately caused Plaintiff to be assaulted[50] (handcuffed was deliberately and maliciously over tightly secured by McGregor) and later arrested and now being prosecuted by the State of Texas. Plaintiff's children also witnessed the unlawful restraint.

---

[50] An assault occurs if a person "intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." *Id.* § 22.01(a)(3). *See also, Loaisiga v. Cerda,* 379 S.W.3d 248 (Tex. 2012)

73

325.    Defendant McGregor was acting within the scope of his employment on behalf of Defendant NFM when he unlawfully restrained Plaintiff.

326.    Upon information and belief, Defendant McGregor has engaged in a customary plan whose result have been the detention and arrest of more than 200 suspected shoplifters, most of whom turned out to be innocent.[51]

327.    Defendant NFM has allowed its employee, Defendant McGregor to perform the function even when there is no reasonable suspicion or probable cause for the detention or arrest.

328.    As a direct and proximate consequence of said conduct of the Defendant, CASEY MCGREGOR and NFM, the Plaintiff suffered violations of his constitutional rights, severe physical and mental health impairments, developed severe anxiety and depression, emotional and physical distress, mental anguish, pain and suffering and future pain and suffering, experienced intense fear, nightmares, humiliation, physical and emotional trauma, embarrassment, a decline in general well-being, monetary loss, and loss of enjoyment of life.

329.    WHEREFORE, the Plaintiff prays for judgment in his favor and against the Defendant, CASEY MCGREGOR, individually, and NFM, in excess of five million ($5,000,000.00) dollars in compensatory damages, punitive damages, plus fees and costs.

**COUNT XXIII**
**42 U.S.C. § 1983: False Arrest Against**
**Defendants Casey McGregor, Jason Stevens and NFM**

330.    All the foregoing allegations are repeated and re-alleged as though fully set forth herein.

---

[51] https://www.linkedin.com/in/casey-mcgregor-cfi-1a87a66b ("I have detained/arrested 49 suspects for fraudulent activity.") (As of November 2017).

331.   At all relevant times herein, Defendant Stevens was a state actor who acted under color of state law.

332.   At all relevant times herein, Defendant McGregor acted jointly with Defendant Stevens, and therefore his actions can fairly be said to be attributable to the State.[52]

333.   Defendant McGregor arrested Plaintiff and brought him back to the NFM Detention Room.

334.   Defendant McGregor (1) interrogated and badgered Plaintiff, (2) surreptitiously recorded the interrogation, (3) unlawfully restrained his wife and children, (4) seized his cell phone, (5) called the police and designated him to be arrested by Officer Stevens.

335.   Defendant McGregor did not uncover any evidence of the charged offense of Possession of Identifying Information. *See*. Texas Penal Code § 32.51.

336.   Upon arrival, Officer Stevens allowed, inter alia, McGregor to continue interview both Plaintiff and his wife, Carline Merisier.

337.   Defendant Stevens did not conduct an independent investigation in good faith. Instead, Defendant Stevens' Probable Cause Affidavit to justify the arrest mostly contains unfounded allegations of theft and other falsehoods provided by Defendant McGregor.

---

[52] *Wilkerson v. State*, 173 S.W.3d 521, 529-530 (Tex. Crim. App. 2005); "private action may be deemed state action when the defendant's conduct is 'fairly attributable to the State.' " *See. Priester v. Lowndes County*, 354 F.3d 414, 423 (5th Cir. 2004) (quoting *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999)). *See also, Moody v. Farrell*, 868 F.3d 348, 352 (5th Cir. 2017) (the standard to establish fair attribution).

338.   In fact, Officer Stevens has testified to arrest Defendant solely on what was reported to him by Defendant McGregor.

339.   Defendant Stevens also did not uncover evidence of the charged offense of Possession of Identifying Information. *See.* Texas Penal Code § 32.51.

340.   Notwithstanding the lack of any crime committed by Plaintiff, Defendant Stevens, acting in concert with Defendant McGregor, decided to arrest Plaintiff.

341.   A *transfer of custody*[53] was performed by McGregor when he released Plaintiff to the custody of Defendant Stevens.

342.   Defendant Stevens, in effecting the arrest acted in accordance with a `preconceived plan' to arrest Plaintiff merely because he was designated for arrest by Defendant McGregor and NFM.

343.   NFM, through its employees, and the police had a customary plan whose result was the detention in the present case.

344.   Plaintiff's arrest was without probable cause.

345.   The Defendants knowingly and intentionally made false statements and presented fabricated evidence to an independent intermediary in order to obtain an arrest warrant in reckless disregard of the truth. *See. Franks v. Delaware*, 438 U.S. 154, 171 (1978).

346.   The false statements were, inter alia, that Plaintiff was in possession of Identifying Information of an unknown individual; that Plaintiff and that unknown

---

[53] *Dabbs v. State*, No. 03-08-00447-CR (Tex. App. Jun. 2, 2009); *Andrade v. State*, 6 S.W.3d 584 (Tex. App. 1999); *Knot v. State*, 853 S.W.2d 802 (Tex.App.-Amarillo 1993, no pet.).

individual know each other; that Plaintiff used that unknown individual information to obtain credit then made purchases and applied the purchase amount to the credit account.

347.    Defendants later used the fabricated false evidence and false statements before a grand jury to obtain an indictment against Plaintiff.

348.    Excising Defendants falsehoods and malicious statements from the officer's probable cause affidavit would have altered the conclusion that probable cause existed in this case.

349.    Thus, both intermediaries (the independent magistrate & grand jury) lacked probable cause to issue the warrantless arrest and indictment, respectively.

350.    As a direct and proximate consequence of said conduct of the Defendants, CASEY MCGREGOR and JASON STEVENS, the Plaintiff suffered violations of his constitutional rights, severe physical and mental health impairments, developed severe anxiety and depression, emotional and physical distress, mental anguish, pain and suffering and future pain and suffering, experienced intense fear, nightmares, humiliation, physical and emotional trauma, embarrassment, a decline in general well-being, monetary loss, and loss of enjoyment of life.

351.    WHEREFORE, the Plaintiff prays for judgment in his favor and against the Defendants, JASON STEVENS, individually, CASEY MCGREGOR, individually, and NFM, in excess of five million ($5,000,000.00) dollars in compensatory damages, punitive damages, plus fees and costs.

## COUNT XXIV
### 42 U.S.C. § 1983: Equal Protection
### Claim Against Defendant Kelly Goodness

352.   Plaintiff repeats, re-alleges, and incorporates herein each of the preceding and following paragraphs as if fully set forth herein.

353.   At all relevant times herein, the named Defendant was a state actor who acted under color of state law, for she partook in a joint action with the State.[54]

354.   Plaintiff is a black male of African descent, and an immigrant.

355.   Defendant Goodness, with reckless disregard for the truth, prepared a so-called forensic psychological examination report replete with naked and deliberate lies and falsehoods, intended to unduly move the jury in Plaintiff's then scheduled competency jury trial and soon-to-be guilt/innocent criminal trial.

356.   Defendant Goodness's report was motivated by, inter alia,[55] racial discrimination and animus against Plaintiff in violation of Plaintiff's Fourteenth Amendment right to the United States Constitution.

---

[54] *See. Wilkerson v. State*, 173 S.W.3d 521, 529-530 (Tex. Crim. App. 2005) ("whether CPS caseworker, teacher, preacher, probation officer, or mere family friend—is, in fact, working for or on behalf of the police by interrogating a person in custody, that agent is bound by all constitutional and statutory confession rules, including *Miranda* and Article 38.22."). *See also, Bass v. Parkwood Hosp.*, 180 F.3d 234, 241-42 (5th Cir. 1999) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 2754-55, 73 L.Ed.2d 482 (1982) (outlining formulas in determining when private conduct may be charged to the state).

[55] Defendant Price also had a pecuniary interest as well. The fact that he was paid to examine Plaintiff, whom he discovered during the sham examination, was aphasiac, and catatonic, thus incapable of any form of communication—this spineless quack nevertheless felt pressured to prepare a purely manufactured report replete with a hodgepodge of meandering stream of sophistries, implicit biases, and racial stereotypes in a callous effort to ensure Plaintiff's (a black man and immigrant) conviction and, thus, his removal from the U.S.

357.   Defendant discriminated against Plaintiff when the latter was intentionally treated differently from other similarly-situated patient who sought evaluation from the Defendant and that there is no rational basis for the difference in treatment.

358.   Defendant Goodness has declined forensic evaluation for a similarly situated comparator who were similarly-situated (those with encephalopathy and Aphasia that were unable to speak or communicate) with the Plaintiff.

359.   When the individual contacted Defendant Goodness for an evaluation, the latter declined the request for evaluation, citing it was impossible to evaluate those who cannot speak.

360.   Defendant's actions were motivated by arbitrary, vindictive and malicious reasons as there was no rational basis for the disparate treatment, save for the simple fact that Defendant was out to "get" the Plaintiff, especially in light of the high degree of personal animus many people around the country, particularly in Texas, harbor against immigrants, especially when we have a racist president in the white house.

361.   There is no doubt Defendant Goodness's sham evaluation was not only motivated by racial animus, xenophobia, but also ill-will and illegitimate animus against Plaintiff, which is rooted in, and precipitated by, national hysteria about immigrants "taking over our country."

362.   As a direct and proximate consequence of said conduct of Defendant, KELLY GOODNESS, the Plaintiff suffered violations of his constitutional rights, severe physical and mental health impairments, developed severe anxiety and depression, emotional and physical distress, mental anguish, pain and suffering and future pain and

suffering, experienced intense fear, nightmares, humiliation, physical and emotional trauma, embarrassment, a decline in general well-being, and loss of enjoyment of life.

363.    WHEREFORE, the Plaintiff prays for judgment in his favor and against Defendant KELLY GOODNESS, individually, in excess of one million ($1,000,000.00) dollars in compensatory damages, punitive damages, plus fees and costs.

## COUNT XXV
### 42 U.S.C. § 1983: Libel
### Against Defendant Kelly Goodness

364.    Plaintiff repeats, re-alleges, and incorporates herein each of the preceding and following paragraphs as if fully set forth herein.

365.    At all relevant times herein, the named Defendant was a state actor who acted under color of state law.

366.    Defendant Goodness published defamatory statements under oath in a report about Plaintiff to the Denton County District Attorney's Office in order to secure and sway the jury in prosecution against Plaintiff.

367.    Specifically, Defendant Kelly, despite diagnoses of medical experts who specialized in Plaintiff's illness to the contrary, prepared and published a report in which she accused Plaintiff of malingering Plaintiff's medical condition so as to avoid prosecution and deportation.

368.    Due to Defendant Kelly's purposeful and intentional acts, the prosecution is intended to use Kelly's racially-motivated bogus findings during Plaintiff's criminal trial (to show—allegedly—consciousness of guilt) to sway the jury in its favor.

369.    The statement published regarding Plaintiff was false.

370.    Plaintiff is extremely embarrassed and shamed by the publication.

371.   The evidence will show that the Defendants were purposefully and intentionally malicious about the truth of the statements.

372.   As a direct and proximate consequence of said conduct of the Defendant, KELLY GOODNESS, the Plaintiff suffered violations of his constitutional rights to invasion of privacy, severe physical and mental health impairments, developed severe anxiety and depression, emotional and physical distress, mental anguish, pain and suffering and future pain and suffering, experienced intense fear, nightmares, humiliation, physical and emotional trauma, embarrassment, a decline in general well-being, and loss of enjoyment of life.

373.   WHEREFORE, the Plaintiff prays for judgment in his favor and against the Defendant, KELLY GOODNESS, in her individual capacity, in excess of one million ($1,000,000.00) dollars in compensatory damages, punitive damages, plus fees and costs.

### COUNT XXVI
### 42 U.S.C. § 1983: Unreasonable Search
### Against Defendants Jane Doe Jailers & Sheriff Tracy Murphree

374.   Plaintiff repeats, realleges, and incorporates herein each of the preceding and following paragraphs as if fully set forth herein.

375.   At all relevant times herein, the named Defendants were state actors who acted under color of state law.

376.   During Plaintiff's pretrial detention of 3 days, Defendants subjected him to at least 3 visual body-cavity searches.

377.   Plaintiff was neither known to have, nor accused of, having contraband prior to the search.

378.   As a pretrial detainee held on a mere nonviolent criminal offense, Plaintiff's strip and cavity search was unreasonable in violation of the Fourth Amendment and Due Process Clause of the Fourteenth Amendment.

379.   Defendants John Doe Jailers 1-3 violated Plaintiff's Fourth Amendment right to be free from unreasonable searches by subjecting him to numerous visual body-cavity searches pursuant to Denton County Jail's policies.

380.   Defendant Tracy Murphree is the policy maker for the county jail and manages the day to day operation of the jail

381.   The invasive strip and visual body-cavity searches were an official policy and custom of the jail.

382.   As a result of this custom and policy of Defendant Sheriff Tracy Murphree, Plaintiff was subjected to that vile practice.

383.   Said actions of Sheriff Tracy Murphree violated the Plaintiff's Fourth Amendment Right (unreasonable search), which also amounts to a deprivation of liberty and invasion of bodily privacy without due process of law, which is prohibited by the Fourth and Fourteenth Amendment of the United States Constitution and were in violation of said rights protected by 42 U.S.C. § 1983.

384.   As a direct and proximate consequence of said conduct of the Defendants, JANE DOE JAILERS 1-3 & Sheriff TRACY MURPHREE, the Plaintiff suffered violations of his constitutional rights, severe physical and mental health impairments, developed severe anxiety and depression, emotional and physical distress, mental anguish, pain and suffering and future pain and suffering, experienced intense fear, nightmares, humiliation, physical and emotional trauma, embarrassment, a decline in

general well-being, monetary loss, and loss of enjoyment of life.

385.    WHEREFORE, Plaintiff prays for judgment in his favor and against the

Defendants JANE DOE JAILERS, each in her individual capacity, and Sheriff TRACY

MURPHREE, in his official capacity, in excess of one million ($1,000,000.00) dollars in

compensatory damages, punitive damages, plus fees and costs.

**TEXAS STATUTORY CLAIMS**

**COUNT XXVII**
**HACA[56] Claims Against Defendant**
**Jason Stevens re: Apple Mcbook Computer**

386.    Plaintiff incorporates allegations in the foregoing paragraphs.

387.    Defendants Jason Stevens knowingly "access" Plaintiff's apple mcbook

computer without a court order and without the effective consent of the owner—Plaintiff.

*See*. Tex. Penal Code Ann. § 33.02(a).

388.    Defendants seized and accessed the computer without a warrant in

violation of the Fourth Amendment to the United States Constitution and Texas Code of

Criminal Procedure § 18.0215. *See*. *Riley v. California*, 134 S. Ct. 2473, 573 U.S., 189 L.

Ed. 2d 430 (2014).

389.    The Defendants knowingly and intentionally access said property in

violation of Tex. Civ. Prac. & Rem. Code Ann. § 143.001(a).

390.    The contents of the computer included emails, bank records, medical

information, videos and photographs of Plaintiffs' children and relatives and vacations at

Disney World and other venues.

---

[56] Harmful Access by Computer Act (HACA).

391.    Plaintiff asserts that she has been damaged as a result of Defendants' access and the possible destruction of her property and the contents therein.

392.    WHEREFORE, Plaintiff prays for judgment in her favor and against each of the named Defendant in the following terms: **(a)** Actual Damages in the amount of Ten Thousand ($10,000.00) pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 143.002(1) and **(b)** costs for filing and preparation of this suit in an amount to be determined by the court. *Id.* § 143.002(2).

**COUNT XXVIII**
**HACA Claim Against Defendant**
**Jason Stevens re: Cellular Phone**

393.    Plaintiff incorporates allegations in the foregoing paragraphs.

394.    Defendants Jason Stevens knowingly "access" Plaintiff's cell phone[57] without a court order and without the effective consent of the owner—Plaintiff. *See*. Tex. Penal Code Ann. § 33.02(a).

395.    Defendants seized and accessed the cell phone without a warrant in violation of the Fourth Amendment to the United States Constitution and Texas Code of Criminal Procedure § 18.0215. *See. Riley v. California*, 134 S. Ct. 2473, 573 U.S., 189 L. Ed. 2d 430 (2014).

396.    The Defendants knowingly and intentionally access said property in violation of Tex. Civ. Prac. & Rem. Code Ann. § 143.001(a).

---

[57] A cellular phone is defined as a "computer" for purposes of HACA ("in reality, 'a modern cell phone is a computer . . .' " *See. Miller v. Talley Dunn Gallery*, LLC, 2016 WL 836775 (Tex. App.–Dallas, Mar. 3, 2016). *See also, Id.* § 33.01(4).

397.    The contents of the cell phone included emails, bank records, medical information, videos and photographs of Plaintiffs' children and relatives and vacations at Disney World and other venues.

398.    Plaintiff asserts that he has been damaged as a result of Defendants' access and the possible destruction of his property and the contents therein.

399.    WHEREFORE, Plaintiff prays for judgment in her favor and against each of the named Defendants in the following terms: **(a)** Actual Damages in the amount of Ten Thousand ($10,000.00) pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 143.002(1) and **(b)** costs for filing and preparation of this suit in an amount to be determined by the court. *Id.* § 143.002(2).

**COUNT XXIX**
**Theft of Property Against Defendants**
**Jason Stevens & The Colony Police Department**

400.    Plaintiff incorporates allegations in the foregoing paragraphs.

401.    Defendants Jason Stevens "unlawfully appropriates the property (namely, an Apple Macbook computer) of Plaintiff, with intent to deprive the owner of property" without the owner's "effective consent." Tex. Penal Code Ann. § 31.03(a)-(b).

402.    The contents of the computer included emails, bank records, medical information, videos and photographs of Plaintiffs' children and relatives and vacations at Disney World and other venues.

403.    Plaintiff asserts that he has been damaged as a result of Defendants' theft and possible destruction of his property.

404.    The Defendants are liable for damages resulting from the theft. Tex. Civ. Prac. & Rem. Code Ann. § 134.003(a).

405.    WHEREFORE, Plaintiff prays for judgment in his favor and against each of the named Defendants in the following terms: **(a)** Actual Damages in the amount of Ten Thousand ($10,000.00) pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 134.005(a)(1); **(b)** Exemplary Damages in excess of Thirty Thousands ($30,000.00) dollars or $1,000.00. *see id.*; and **(c)** costs for filing and preparation of this suit in an amount to be determined by the court.

## COUNT XXX
### Theft of Property Against Defendants
### Jason Stevens & The Colony Police Department

406.    Plaintiff incorporates allegations in the foregoing paragraphs.

407.    Defendant Jason Stevens "unlawfully appropriates the property (namely, a cellular phone) of Plaintiff, with intent to deprive the owner of property" without the owner's "effective consent." Tex. Penal Code Ann. § 31.03(a)-(b).

408.    The contents of the cell phone included emails, bank records, medical information, videos and photographs of Plaintiffs' children and relatives and vacations at Disney World and other venues.

409.    Defendant has also deprived Plaintiff of her address book contained in his digital personal property.[58]

410.    Plaintiff owned the wireless mobile devices and his personal Address Book Data maintained and stored on those devices.

411.    Plaintiff asserts that he has been damaged as a result of Defendants' theft and possible destruction of his property.

---

[58] Wireless mobile devices are "property" under Tex. Penal Code § 31.01(5)(b). Personal address book data, whether in electronic or physical media—is also "property" under Tex. Penal Code § 31.01(5) (including both tangible and "intangible personal property," such as data, within the definition of "property")

412.     The Defendants are liable for damages resulting from the theft. Tex. Civ. Prac. & Rem. Code Ann. § 134.003(a).

413.     WHEREFORE, Plaintiff prays for judgment in his favor and against each of the named Defendants in the following terms: **(a)** Actual Damages in the amount of Ten Thousand ($10,000.00) pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 134.005(a)(1); **(b)** Exemplary Damages in excess of Thirty Thousands ($30,000.00) dollars or $1,000.00. *see id.*; and **(c)** costs for filing and preparation of this suit in an amount to be determined by the court.

### COUNT XXXI
### (42 U.S.C. § 1985(3): Race & Alienage-Based
### Civil Conspiracy Against Defendants—McGregor, Stevens and Dickens)

414.     Plaintiff incorporates allegations in the foregoing paragraphs.

415.     At all relevant times herein, the named Defendants were state actors who acted under color of state law.

416.     Plaintiff is a member of a class, to wit, a black person, and an undocumented immigrant recognizable under § 1985(3).

417.     Defendant McGregor arrested Plaintiff without probable cause in violation of Plaintiff's Fourth Amendment right.

418.     McGregor's statement "we don't want your kind around here. We know what you are up to bud!" drew an inference of racial animus.

419.     Defendant Stevens' "Nigerian" statement also drew an inference of racial animus.

420.     Discovery notations of communications between Dickens, Johnson County officials and ICE show a clear intent on the part of Dickens that the prosecution

of Plaintiff is motivated by Defendant Dickens' racial animus and xenophobia (i.e., alienage) toward Plaintiff.

421.    The aforementioned acts were motivated by Defendants' racial bias and animus against Plaintiff due to the latter's race (black), national origin ("Nigerian"[59]) and alienage (non-citizen of the U.S.) in violation of Plaintiff's Fourteenth Amendment right.

422.    Defendant discrimination is based on Plaintiff's race and alienage in that Defendant chose their course of action (conspire to falsely convict Plaintiff of a CIMT) at least in part for the purpose of maliciously prosecuting Plaintiff and thus effecting Plaintiff's removal—a nonresident immigrant—from the United States.

423.    As a direct and proximate consequence of said conduct of the Defendants, the Plaintiff suffered violations of his constitutional rights, emotional and physical distress, mental anguish, pain and suffering and future pain and suffering, a decline in general well-being, monetary loss, and loss of enjoyment of life.

424.    WHEREFORE, the Plaintiff prays for judgment in his favor and against the Defendants, each individually, in excess of one million ($1,000,000.00) dollars in compensatory damages, punitive damages, plus fees and costs.

### COUNT XXXII
### (42 U.S.C. § 1983: INJUNCTIVE RELIEF FROM BAD FAITH PROSECUTION)

425.    Plaintiff incorporates allegations in the foregoing paragraphs.

426.    At all relevant times herein, the named Defendants were state actor who acted under color of state law.

---

[59] As assumed by Officer Stevens

427.    Defendant Michael Dickens acted individually and in concert with other officials (Casey McGregor and Jason Stevens) to initiate criminal proceedings against Plaintiff in a bad faith attempt to harass, retaliate against, and deter Plaintiff from (**1**) exercising his constitutionally protected rights to remain silent during custodial interrogation and (**2**) to prevent Plaintiff "kind" (i.e. black male and immigrant who has an alleged penchant to commit fraud) from shopping at NFM and to deter them from venture into Denton County, Texas, a predominantly white populace.

428.    Discovery notations have also revealed that the initiation and continued prosecution of the state court criminal proceedings brought against Plaintiff in the 158th Judicial District Court of Denton County, Texas, is a retaliatory act aimed at punishing him for (**1**) reporting a sexual assault against officials of Johnson County, Texas and Immigration and Customs Enforcement (ICE) with whom Defendants Denton District Attorney's Office and its prosecutor Defendant Michael Dickens have been collaborating with for the purpose of colluding to bring about Plaintiff's conviction and removal from the United States; (**2**) to prevent the vindicating of Plaintiff's civil rights to prosecute his civil suits against Johnson County, Texas officials and to be free from discrimination on the basis of his race and alienage and national origin in violation of Plaintiff's First, Fourth, Fifth, and Fourteenth Amendment rights.

429.    In a collusive plan to retaliate against Plaintiff, Defendants manufactured a criminal offense against Plaintiff and his wife, unsuccessfully attempted plea offers to Plaintiff so as to collaterally bring out his removal from the United States, successfully conspired in ordering the pretrial detention of Plaintiff's wife to coerced a guilty plea, and now bent on continuing its bad faith prosecution against Plaintiff to sabotage

Plaintiff's pro se civil rights suit against Johnson County, Texas and any potential suit against the Defendants.

430.    The prosecution was undertaken by state officials in bad faith without hope of obtaining a valid conviction in violation of Plaintiff's First, Fourth, Fifth, and Fourteenth Amendment rights.

431.    WHEREFORE, the Plaintiff prays for judgment in his favor in that the Court shall enjoin Defendants Denton County District Attorney's Office and Michael Dickens from the continued prosecution of Plaintiff in the 158th Judicial District of Denton County, Texas.

### COUNT XXXIII
### (42 U.S.C. § 1985(3): INJUNCTIVE RELIEF
### FROM BAD FAITH PROSECUTION)

432.    Plaintiff incorporates allegations in the foregoing paragraphs.

433.    At all relevant times herein, the named Defendants were state actors who acted under color of state law.

434.    Plaintiff is a member of a class, to wit, a black person, *and* an undocumented immigrant recognizable under § 1985(3).

435.    There was an agreement between Defendants D.A. Michael Dickens, Jason Stevens and Jason McGregor and to deprive Plaintiff of his rights under the Due Process and Equal Protection Clauses of the U.S. Constitution's Fourteenth Amendment.

436.    There was also an agreement between Defendants D.A. Michael Dickens, Jason Stevens and other confederates from Johnson County, Texas (*See* Federal Civil Action No.:3:18-cv-2497-B-BN) to deprive Plaintiff of his First Amendment Constitutional right of access to courts to vindicate his civil rights.

437.    Plaintiff was arrested by Defendant Jason Stevens and Casey McGregor and was subsequently placed in ICE custody.

438.    While in ICE custody, Plaintiff was sexually assaulted by an official from Johnson County, Texas, in violation of Plaintiff's Fourteenth Amendment right to bodily integrity.

439.    Johnson County, Texas, and ICE conspired and brought criminal charges against Plaintiff after offering Plaintiff a quid pro quo. (i.e., they offered to halt removal proceedings and the then-criminal charges of false report for reporting the sexual assault in exchange to recant and withdraw sexual assault complaint against the perpetrator). (*See* Federal Civil Action No.:3:18-cv-2497-B-BN at ¶ 77).

440.    When Plaintiff failed to accept the Johnson County, Texas' offer of quid pro quo, the Johnson County filed criminal charges by Information against Plaintiff.

441.    Discovery notations have revealed the Denton County District Attorney's Office and ADA Michael Dickens brought charges against Plaintiff solely to falsely convict him in order to bring about his removal from the United States because (**1**) Plaintiff exercised his constitutionally protected rights to remain silent during custodial interrogation by Officer Stevens and Casey McGregor and (**2**) to prevent Plaintiff "kind" (i.e. black male and immigrant who has an alleged penchant to commit fraud) from shopping at NFM and to deter them from venture into Denton County, Texas, a predominantly white populace.

442.    Discovery notations also revealed Defendants Denton County District Attorney's Office and Michael Dickens' continued prosecution is to harass Plaintiff and

to coerce him into a guilty plea for a crime the latter did not commit so as to achieve the goals laid out in ¶ 447.

443.    Discovery notations has also revealed Defendants Denton County District Attorneys' Office and ADA Michael Dickens have been colluding to retaliate against Plaintiff for having been acquitted on the false criminal charge lodged by Johnson County officials against Plaintiff.

444.    Upon information and belief, ADA Michael Dickens have been colluding with Johnson County officials to ensure Plaintiff is prosecuted and convicted in order to effectively sabotage Plaintiff's pending federal lawsuit against Johnson County, Texas et al.

445.    The Defendants have sought to deprive Plaintiff of his civil and constitutional rights to remain silent during custodial interrogation (First and Fifth Amendment), to report a crime as a victim of sexual assault (First Amendment), to seek redress of grievances from the government through the judicial systems (First Amendment) and to be free from bad faith prosecution based on race and national origin (Fifth and Fourteenth Amendment).

446.    The prosecution was undertaken by state officials in bad faith with no hope of obtaining a valid conviction in violation of Plaintiff's First, Fourth, Fifth, and Fourteenth Amendment rights.

447.    WHEREFORE, the Plaintiff prays for judgment in his favor in that the Court shall enjoin Defendants Denton County District Attorney's Office and Michael Dickens from the continued prosecution of Plaintiff in the 158th Judicial District of Denton County, Texas.

**COUNT XXXIV**
**(42 U.S.C. § 1983: RETALIATORY PROSECUTION)**

448.   Plaintiff incorporates allegations in the foregoing paragraphs.

449.   At all relevant times herein, the named Defendants were state actors who acted under color of state law.

450.   Plaintiff's refusal to answer questions during his custodial interrogation by McGregor and Stevens are constitutionally protected activity under the First and Fifth Amendment.

451.   Plaintiff has a Fourth and Fourteenth Amendment constitutional right not to be arrested by McGregor and Stevens on the basis of his race and national origin in an effort by Defendants McGregor and Stevens to prevent Plaintiff "kind" (i.e. black male and Nigerian immigrant who has an alleged penchant to commit fraud) from shopping at NFM.

452.   Plaintiff, as a crime victim, has a First Amendment constitutional right to report his sexual assault to law enforcement.

453.   Plaintiff, as a crime victim, also has a First Amendment constitutional right to seek redress of grievances from the Courts ("Access to Courts").

454.   Plaintiff also has a Fifth and Fourteenth Amendment right to be free from bad faith prosecution based on his race and national origin.

455.   Plaintiff asserts the named Defendants violated his rights under the First, Fourth and Fourteenth Amendment under the U.S. Constitution when they pursued criminal charges against him for retaliatory purposes—to punish him for refusing to answer questions during custodial interrogation, to retaliate against him based on his race and national origin for having ventured into a predominantly while population to

93

allegedly commit fraud, to retaliate against him for reporting a sexual assault in Johnson County and having been acquitted of criminal charges in Johnson County, and to discourage and deter Plaintiff from further pursuing his pending lawsuit against Johnson County and any future lawsuit against the Defendants (which this action has accomplished).

456.   Defendants McGregor and Stevens detained and arrested Plaintiff without reasonable suspicion and/or probable cause in violation of the latter's Fourth Amendment right.

457.   Defendants McGregor and Stevens prepared official reports which contained deliberate falsehoods intended to influence an independent magistrate to sign the Officer's PCA in this case in violation of Plaintiff's Fourth Amendment right.

458.   Defendants McGregor and Stevens prepared official reports which contained deliberate falsehoods and testified in grand jury proceeding intended to influence the grand jury to return a bill of indictment in this case in violation of Plaintiff's Fourth Amendment right.

459.   Defendants Denton County District Attorney's Office and Michael Dickens has engaged in a bad faith prosecution of Plaintiff with no hope of obtaining a valid conviction.

460.   WHEREFORE, the Plaintiff prays for judgment in his favor and against the Defendants, each individually, in excess of one million ($1,000,000.00) dollars in compensatory damages, punitive damages, plus fees and costs.

## COUNT XXXV
### (42 U.S.C. § 1983/*Monell*[60]: Unlawful Detention Against
### Defendants NFM, Lipsett, McGregor, Coulon and The Colony, Texas)

461.    All the foregoing allegations are repeated and re-alleged as though fully set forth herein.

462.    At all relevant times herein, Defendants Lipsett, McGregor and NFM acted jointly with Defendant Stevens and the Colony Police Department, and therefore their actions can fairly be said to be attributable to the State.[61]

463.    At all relevant times herein, Defendant The Colony Police Department was acting under color of state law.

464.    Upon information and belief, Defendants, Lipsett, McGregor & NFM have entered into a law enforcement relationship with the Colony Police Department wherein the latter has goaded the former to detain, arrest and interrogate NFM shoppers accused of shoplifting or theft.

465.    Upon information and belief, the Colony Police Department has also entered into an agreement with the named Defendants and goaded said Defendants to engage in the surreptitious audio-video recording of custodial interrogation of those accused of theft or shoplifting at NFM.

466.    Defendants detained Plaintiff in the NFM "detention room" for over two hours without cause and without authority of law.

---

[60] *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978)
[61] *Wilkerson v. State*, 173 S.W.3d 521, 529-530 (Tex. Crim. App. 2005); "private action may be deemed state action when the defendant's conduct is 'fairly attributable to the State.' " *See. Priester v. Lowndes County*, 354 F.3d 414, 423 (5th Cir. 2004) (quoting *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999)). *See also, Moody v. Farrell*, 868 F.3d 348, 352 (5th Cir. 2017) (the standard to establish fair attribution).

467. Defendants did not find any evidence of a crime, which could have given him reasonable suspicion to detain Plaintiff.

468. Defendants did not uncover any evidence of the charged offense of Possession of Identifying Information. *See*. Texas Penal Code § 32.51.

469. Plaintiff's detention was the result of a custom and policy promulgated by NFM and the Chief of Police of the Colony Police Department, David Coulon.

470. As a direct and proximate consequence of said conduct of the Defendants, the Plaintiff suffered violations of his constitutional rights, severe physical and mental health impairments, developed severe anxiety and depression, emotional and physical distress, mental anguish, pain and suffering and future pain and suffering, experienced intense fear, nightmares, humiliation, physical and emotional trauma, embarrassment, a decline in general well-being, monetary loss, and loss of enjoyment of life.

471. WHEREFORE, the Plaintiff prays for judgment in his favor and against Defendants, CASEY MCGREGOR and EDWARD LIPSETT, each individually and officially, Defendant DAVID COULON, individually and officially, Defendants NFM and The Colony, Texas, in excess of five million ($5,000,000.00) dollars in compensatory damages, punitive damages, plus fees and costs.

## COUNT XXXVI
### (False Imprisonment—Texas Common Law
### Against Defendants NFM, Lipsett, and McGregor)

472. All the foregoing allegations are repeated and re-alleged as though fully set forth herein.

473. Plaintiff was falsely arrested and detained by the named Defendants without Plaintiff's consent and without authority of law.

474.    Plaintiff suffered substantial injuries and damages, including severe mental and emotional distress.

475.    WHEREFORE, the Plaintiff prays for judgment in his favor and against Defendants, CASEY MCGREGOR and EDWARD LIPSETT, each individually and officially, and NFM in excess of five million ($5,000,000.00) dollars in compensatory damages, punitive damages, plus fees and costs.

**COUNT XXXVII**
**(Breach of Contract Against Big Bubba's Bail Bond)**

476.    All the foregoing allegations are repeated and re-alleged as though fully set forth herein.

477.    On November 13, 2015, Plaintiff entered into a contract with Defendant Big Bubba's Bail Bonds.

478.    Plaintiff abided by the terms of the contract at all times.

479.    Defendant breached said contract and surrendered Plaintiff's bond without cause.

480.    The Plaintiff was then re-arrest, booked, searched and re-released by having to pay a subsequent bond amount with another company.

481.    WHEREFORE, the Plaintiff prays for judgment in his favor and against Defendants, Big Bubba's Bail Bond, in excess of one million ($1,000,000.00) dollars in compensatory damages, punitive damages, plus fees and costs.

**COUNT XXXVIII**
**(False Imprisonment—Texas Common Law**
**Against Defendants Big Bubba's Bail Bond)**

482.    All the foregoing allegations are repeated and re-alleged as though fully set forth herein.

483.    Plaintiff designated Plaintiff for arrest by causing a court to issue a capias to arrest Plaintiff.

484.    Defendant prematurely and unreasonably caused a court to issue the capias.

485.    Defendant effectively caused Plaintiff's arrest in violation of its contractual obligation with Plaintiff.

486.    Defendant arrested Plaintiff without consent and without authority of law.

487.    Plaintiff suffered substantial injuries and damages, including severe mental and emotional distress.

488.    WHEREFORE, the Plaintiff prays for judgment in his favor and against Defendants, Big Bubba's Bail Bond, in excess of one million ($1,000,000.00) dollars in compensatory damages, punitive damages, plus fees and costs.

## COUNT XXXIX
## (INDEMNIFICATION)

489.    All the foregoing allegations are repeated and re-alleged as though fully set forth herein.

490.    Texas law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

491.    In the event any of the State Defendants, including the subdivisions entity (i.e., Denton County District Attorney's Office, Denton County Attorney's Office, the Colony Police Department) claim any sort of immunity from civil damages in respect to Plaintiff's claims under the federal and/or state Wiretap Acts, Plaintiff requests that their respective municipality be held liable in their stead.

98

492.     The State Defendants were employees of Denton County, Texas and the city of the Colony, Texas, who acted within the scope of their employment in committing the misconducts described herein.

493.     WHEREFORE, should the individual Defendants be found liable for any of the acts alleged above, the Defendants' employers (Denton County, Texas and City of The Colony, Texas) would be liable to pay the Plaintiff any judgment obtained against the employee Defendants.

### JURY DEMAND

494.     Plaintiffs hereby demand a trial by jury on all issues triable by a jury.

### PRAYER FOR RELIEF

495.     Plaintiff asks that the Court award him the following relief:

A.     Injunctive Relief against the Defendants under the Federal and State Wiretap Statutes.

B.     Injunctive Relief against the Defendants under Section 1983 for bad faith prosecution.

C.     All available compensatory damages, including, but not limited to: damages to the Plaintiff for his mental, psychological and physical pain and suffering; and all compensatory damages available under state and federal law;

D.     Punitive damages against all individuals and corporate defendants;

E.     Punitive damages against Defendants sufficient to punish them and to deter further wrongdoing;

F.     Pro Se litigation expenses and research, administrative and clerical fees and costs;

G.     Pre - and post-judgment interest as appropriate; and

H.     Any such other relief that this Court deems just and equitable.

DATED: May 13, 2019                          Respectfully Submitted,

                                             /s/ VanDamme Jeanty
                                             **VANDAMME V. JEANTY**
                                             7221 Lighthouse Road
                                             Arlington, Texas 76002
                                             Phone: (214) 290-5233
                                             Email: vanjean2015@gmail.com

100

ORIGINAL

**RECEIVED**

NOV 13 2019

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

JS 44   (Rev. 06/17) - TXND (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
VANDAMME JEANTY

**(b)** County of Residence of First Listed Plaintiff   TARRANT COUNTY
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Pro Se Plaintiff--VanDamme Jeanty
7221 LIGHTHOUSE ROAD, ARLINGTON, TEXAS 76002. (214) 290 5233

## DEFENDANTS
NEBRASKA FURNITURE MART, et al
DENTON COUNTY, TEXAS, et al

County of Residence of First Listed Defendant   Denton, Texas
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

3-19CV1137-N

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government
Plaintiff
- ☒ 3   Federal Question
*(U.S. Government Not a Party)*
- ☐ 2   U.S. Government
Defendant
- ☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                                          *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place<br>of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place<br>of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | of Property 21 USC 881 | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | ☐ 690 Other | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☒ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1   Original
Proceeding
- ☐ 2   Removed from
State Court
- ☐ 3   Remanded from
Appellate Court
- ☐ 4   Reinstated or
Reopened
- ☐ 5   Transferred from
Another District
*(specify)*
- ☐ 6   Multidistrict
Litigation -
Transfer
- ☐ 8   Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. §§ 2510-2521 & 42 U.S.C. §§ 1983 & 1985
Brief description of cause:
Federal Wiretap Act; Texas Wiretap Act; Injunctive Relief From Bad Faith Prosecution

## VII. REQUESTED IN
## COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S)
## IF ANY
*(See instructions):*
JUDGE

DOCKET NUMBER

DATE
05/13/2019

SIGNATURE OF ATTORNEY OF RECORD
/s/ VanDamme Jeanty

FOR OFFICE USE ONLY

RECEIPT #            AMOUNT   *400*            APPLYING IFP            JUDGE   *N*            MAG. JUDGE   *BH*

DS 116 200